CAROLINE OGDEN JONES *et al.*

*v.*

MAHLON OGDEN JONES *et al.*

*Filed at Ottawa March 26, 1888.*

1. WILLS—*change in a will—presumption as to its purpose.* A person capable of disposing of property by will, must be presumed to know and intend the effect of language employed by him or her. Where a change is made in a will by the substitution of a new provision in relation to a certain matter, it will be presumed such change was made for a purpose, and to effect the disposition of the estate differently, in some respects, from that made by the original will.

2.  SAME—*of the estate devised—whether to vest absolutely, or to be held in trust.* A testatrix directed that all her estate be divided into five equal parts, two of which were to be given to her two daughters, absolutely, and to invest the other three shares, and collect the income therefrom for the use and benefit of her three sons during their lives, paying them the income on their respective shares, and then, by a substituted clause or amendment by a codicil, directed that on the death of any of her sons the trustee should give the share of such deceased son or sons to her two daughters, or the survivor, to be used by them, or the survivor of them, either wholly or in such parts or shares as they, or the survivor of them, in their discretion, should deem desirable, for the benefit of the children, if there should be any living, of said deceased son or sons. One of the sons had died in the lifetime of the testatrix, and this fact presumably led to the change in the will: *Held,* that the devise to the daughters, in respect to the shares set apart for the sons, was not an absolute gift to them, but that they took the share of the deceased son in trust, for the use and benefit of his children.

3.  SAME—*creating a trust—of the form of words to be used.* No particular form of words or language is necessary, in a gift of property, to create a trust. It will be sufficient, especially in the case of wills, that such intention is apparent from the whole will, when considered in all its parts, under the circumstances of the particular case. Precatory words used in a will, equally with direct fiduciary expressions, are frequently sufficient to create a trust by implication.

4.  SAME—*discretion in the trustee—its effect upon the devise—and how far subject to control.* The fact that a large discretion is vested in the trustee, will not operate to defeat the trust. A gift or devise of an estate, or a share of an estate, to a trustee, for the use and benefit of minor children, to be used by the trustee, either wholly or in such parts or shares as may seem desirable, creates a large discretion in the trustee; but that discretion is subject to the supervision and control of the courts of equity, and can not be arbitrarily exercised so as to deprive the beneficiaries of the benefit of the fund.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This was a bill by Caroline Ogden Jones and Frances Ogden Jones, in the circuit court of Cook county, against Mahlon Ogden Jones, and others, including the devisees under the will of Caroline Ogden McCagg, the executor of the will, and the widow and children of William Ogden Jones, deceased, praying for a construction of the will, a substitution of trustees under the same, and for partition.

February 26, 1877, Caroline Ogden McCagg made and published her last will and testament, in substance as follows:

*First*—She gave, devised and bequeathed all her property, of every kind, to Edwin H. Sheldon, Mahlon Ogden Jones and Caroline Ogden Jones, in trust, for the following purposes:

"*Second*—To divide my estate into five equal parts, and give to each of my daughters, Caroline Ogden Jones and Frances Ogden Jones, absolutely, their respective shares of said estate.

"*Third*—To invest the property of the three remaining shares and collect the income thereof, which part shall be held by my said executor, executrix and trustees, separately, for the benefit of my three sons, viz., William Ogden Jones, Mahlon Ogden Jones and Louis Butler McCagg, for and during the time of the respective natural lives of the said sons, and to pay over each year the income of one of said parts, respectively, to my nephew, William Ogden Wheeler, whom I nominate, constitute and appoint as the trustee of my son William Ogden Jones, said income to be used for the benefit of said son William Ogden Jones, and the income of the other said part to my sons Mahlon Ogden Jones and Louis Butler McCagg, for and during the term of the respective natural lives of said children.

"*Fourth*—Upon the death of any one of my said sons, William Ogden Jones, Mahlon Ogden Jones or Louis Butler McCagg, I direct my said trustee or trustees to give the part or share, or parts or shares, set apart for the use and benefit of the said sons, * * * during their lives, to my other said children, viz., Caroline Ogden Jones and Frances Ogden Jones, or such of them as shall be living at the time of the death of said William Ogden Jones or Mahlon Ogden Jones or Louis Butler McCagg, to be used by them, either all, or as much of said part or share, or parts or shares, as they shall deem desirable, for the benefit of the children, if there should be any living, of the said William Ogden Jones or Mahlon Ogden Jones or Louis Butler McCagg, at the time of the death of any one of the said sons.

"*Fifth*—In dividing my estate into these five parts, the amount in which any of my said children shall be indebted to my estate shall be taken into account as part of the share given or set apart for the benefit of said child, and be a charge against the same, and when so taken into account, the indebtedness shall be considered as discharged.

"*Sixth*—In case of the death of any of my said children before my decease, the number of shares into which my estate shall be divided shall be diminished by the number of children so dying."

By the seventh clause, Edwin H. Sheldon, Mahlon Ogden Jones and Caroline Ogden Jones were appointed executors of the will. By the eighth she gave said executors, and the survivor or survivors of them, power to sell, or to hold and improve, the real estate devised in trust, and directed the investment of the proceeds, if sold.

June 27, 1877, the said William Ogden Jones died, leaving a widow and three children, who were made defendants. January 28, 1879, the testatrix made and published a codicil, by which she expressly revoked the fourth clause of her said will, and substituted therefor what she called "the following amended clause :" "Upon the death of any of my sons, (naming them) I direct my said trustee or trustees to give the part or share, or parts or shares, set apart for the use and benefit of the said deceased son or sons during his or their lives, to my said daughters, Caroline Ogden Jones and Frances Ogden Jones, or the survivor of them then living, to be used by them, or the survivor of them, either wholly or in such parts or shares as they, or the survivor of them, in their or her discretion, shall deem desirable, for the benefit of the children, if there should be any living, of said deceased son or sons." She also revoked the sixth clause of the will, and in the third clause the appointment of her nephew, William Ogden Wheeler, as the trustee of her son William Ogden Jones, because of the death of said son.

The will and codicil were admitted to probate in Cook county, in this State, March 16, 1885, and the other persons named as executors having declined to act, letters testamentary were issued to Edwin H. Sheldon, as sole executor, who proceeded to execute the trust. On the hearing in the circuit court, the court, in fixing the rights of the children of William Ogden Jones, deceased, decreed as follows: "And that, under the terms and conditions of said will, and the codicil thereto, one equal fifth part of the said estate of Caroline Ogden McCagg, including the real estate owned by her at her decease, and hereafter described, is to be given to the said Caroline Ogden Jones and Frances Ogden Jones, jointly, as trustees for them, and the survivor of them, to use for the benefit of the said defendants, Alexander M. Jones, Julia H. Jones and William E. Jones, the children of William Ogden Jones, deceased, with power, as such trustees, and as such survivor, to use the said one-fifth part or share either wholly for the benefit of said children, in equal parts or shares, or to use the same in such parts or shares for the benefit of said children, respectively, as they, the said trustees, or the survivor of them, shall, in their or her discretion, deem desirable; and that in so using said one-fifth share, it was the intent of said testatrix that said trustees, and such survivor, should have such power of sale, conveyance, management, control and disposition of any part or parts or the whole of such share in their hands, as trustees, as they might or could exercise over their respective individual shares of said estate, using all parts, and the proceeds thereof, or any part or parts of said share, as trustees, for the benefit of said children, as hereinbefore provided." The complainants prosecuted this appeal from this portion of the decree, for the purpose of testing the construction thereby put upon the clauses of the will and codicil before referred to.

Mr. J. S. NORTON, for the appellants:

The will gives to the daughters full discretion as to the quantum of property to be used for the benefit of the children, thus making the latter wholly dependent upon them. This is indicated by the direction to "give" the property to the daughters, without words limiting the estate; by the discre- tion given them to use the same, "either wholly or in such parts or shares," etc.,—which words are to be understood ac- cording to their common or popular meaning; (*Stettauer* v. *Hamlin*, 97 Ill. 318;) by the failure to provide for survivorship as between the daughters, after vesting of the estate; (*Duryea* v. *Duryea*, 85 Ill. 47;) by the close correspondence between the provision of the codicil on this subject and that of the original will; by reference to the explicit language of the orig- inal will, and the absence of any apparent occasion or intention to change the estate thereby given.

The devise fails to impose a trust because of uncertainty as to the subject. *Mills* v. *Newberry*, 112 Ill. 123; 1 Jarman on Wills, (3d Eng. ed.) 368; *Welsch* v. *Belleville Savings Bank*, 94 Ill. 203; *Fairman* v. *Beal*, 14 id. 244; 2 Redfield on Wills, 421; *In re Sanderson's Trusts*, 3 Kay & J. 497; *Cruwys* v. *Coleman*, 9 Ves. 323; *Bland* v. *Bland*, 2 Cox, 355; 2 Story's Eq. Jur. sec. 1070; Hill on Trustees, 119; 2 Pomeroy's Eq. Jur. sec. 1009; *Hawarth* v. *Dewell*, 6 Jur. (N. S.) 1360; *Gully* v. *Gregoe*, 24 Beav. 185; *Curtis* v. *Rippon*, 5 Mad. 434; *Wynne* v. *Hawkins*, 1 Bro. C. C. 179; 1 Jarman on Wills, 335, 336, and cases cited; *Harding* v. *Glynn*, 2 L. Cas. in Eq. *950, note, and cases cited.

Mr. CLARENCE A. BURLEY, for the appellees:

The property is given to the daughters in trust. There are apt words to create the trust. It is a gift, to be used for the benefit of, etc. Technical words are unnecessary. Pomeroy's Eq. Jur. sec. 1009; Perry on Trusts, secs. 82, 112; Bisp-

ham's Eq. sec. 71; Hill on Trustees, *64, *71; 1 Jarman on Wills, *385, *569.

Words merely precatory are sufficient. Hill on Trustees, *71; 1 Jarman on Wills, *385; *Massey* v. *Sherman,* Ambler's Ch. 520; *Pierson* v. *Garnet,* 2 Brown's Ch. 29; *Blakeny* v. *Blakeny,* 6 Sim. 52; *Cruwys* v. *Coleman,* 9 Ves. Jr. 319; *Raikes* v. *Ward,* 1 Hare's Ch. 445; *In re Sanderson's Trusts,* 3 Kay & J. 497; *Gully* v. *Gregoe,* 24 Beav. 185; *Erickson* v. *Willard,* 1 N. H. 217; *Harrison* v. *Harrison,* 2 Gratt. 1; *Steele* v. *Levisay,* 11 id. 454; *Little* v. *Bennett,* 5 Jones' Eq. 156; *Warner* v. *Bates,* 98 Mass. 274; *Parsons* v. *Baker,* 18 Ves. Jr. 476;

There is certainty of the object of the trust, viz., the children of a deceased son. (Bispham's Eq. secs. 73, 75; 1 Jarman on Wills, 385.) And of the subject matter of the trust, viz., the share set apart for the deceased son. Hill on Trustees, 71; 1 Jarman on Wills, 385; Bispham's Eq. sec. 76, and cases cited above.

The will is to be construed so as to give effect to all its words and provisions. 2 Jarman on Wills, 141, 842; Schouler on Wills, sec. 473; *Jones* v. *Bramblet,* 1 Scam. 276; *Liddard* v. *Liddard,* 6 Jur. (N. S.) 439; *Friedman* v. *Steiner,* 107 Ill. 125.

The words and terms of a will are to be construed and taken in their usual sense. 2 Jarman on Wills, *842, rule 16; *Stettauer* v. *Hamlin,* 97 Ill. 318; Schouler on Wills, sec. 472.

Words giving wide discretion to a trustee are entirely consistent with a trust, and, where a trust is clearly expressed, will be construed to aid in the execution of, rather than to defeat, a trust. Hill on Trustees, (4th Am. ed.) rule 2, in note, p. 116; *Harrison* v. *Harrison,* 2 Gratt. 1; *Steele* v. *Levisay,* 11 id. 454; *Erickson* v. *Willard,* 1 N. H. 217; *Massey* v. *Sherman,* Ambler's Ch. 520; *Raikes* v. *Ward,* 1 Hare's Ch. 445; *Little* v. *Bennett,* 5 Jones' Eq. 156; *Beevor* v. *Partridge,* 11 Sim. 229; *Hamley* v. *Gilbert,* Jacobs, 354; *Hart* v. *Tribe,* 18 Beav. 215.

The discretion of trustees is not arbitrary, but subject to the control of the courts for its reasonable exercise. Bispham's Eq. secs. 74, 75; *Chase* v. *Chase*, 2 Allen, 101; *Warner* v. *Bates*, 98 Mass. 274; *In re Sanderson's Trusts*, 3 Kay & J. 497; *Raikes* v. *Ward*, 1 Hare's Ch. 445; *Costabadie* v. *Costabadie*, 6 id. 409; *Erickson* v. *Willard*, 1 N. H. 217; Adams' Eq. 29.

The circumstances surrounding the making of a will may be inquired into to aid in the construction. 2 Jarman on Wills, *841, rule 10; Schouler on Wills, sec. 469.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This case involves the proper construction of the will of Caroline Ogden McCagg, as changed by her codicil thereto. By the original will, all her estate was devised to her executors in trust, to be by them divided into five equal shares, corresponding with the number of her children,—two daughters and three sons. When this division was made by her executors, they, as trustees, were required to give to the daughters, Caroline and Frances, their respective shares of the estate, being one-fifth to each, absolutely. The remaining three shares the executors were directed to invest, collect the income therefrom, and hold the same separately,—that is, in three shares,—for the benefit of her three sons, William, Mahlon and Louis, respectively, during the term of their respective lives, and to pay over each year the income derived from William's part or share, to a trustee appointed in the will, and to pay the other two sons the income derived from their part or share during their natural lives. By the fourth clause of the will, provision was made for the disposition of the income on a son's part or share in case of his death after the testatrix. Upon the death of any one of the sons, the executors were directed to give the share set apart for his use and benefit, to the two daughters, or the survivor of them, to "be used by them, either all or as much of said part or share" as they might deem desirable, for

the benefit of the children of such deceased son, if any should be living. By the sixth clause it was provided, that in case any of her children should die before her decease, the number of shares into which her estate should be divided should be diminished accordingly, so that if one died before her, the estate would be divided into four shares, thus cutting off from her bounty the children of a son so dying. That contingency happened in her lifetime, by the death of her son William, June 27, 1877, leaving three children, which it is safe to assume led to the making of the codicil, to avoid disinheriting her grandchildren, no provision remaining for their benefit in the original will. A person capable of disposing of property by will must be presumed to know and intend the effect of language employed by him or her, and it must be presumed that the change in Mrs. McCagg's will was made for a purpose, and to effect the disposition of her estate differently, in some respects, from that made by the original will.

By the codicil made in 1879, after knowledge of the death of her son William, leaving infant children, she revoked the clause appointing Wheeler trustee for said son, and also revoked the sixth clause of her will, which would have required her executors to divide the estate into four instead of five shares, and in lieu and substitution of the fourth clause of her will provided as follows: "Upon the death of any of my sons, (naming them) I direct my said trustee or trustees to give the part or share, or parts or shares, set apart for the use or benefit of the said deceased son or sons, during his or their lives, to my said daughters, Caroline Ogden Jones and Frances Ogden Jones, or the survivor of them then living, to be used by them, or the survivor of them, either wholly or in such parts or shares as they, or the survivor of them, in their or her discretion, shall deem desirable, for the benefit of the children, if there should be any living, of said deceased son or sons." The controversy relates to the proper construction of this amended or substituted clause of the will, appellees contend-

ing that a trust is thereby impressed upon the one-fifth share set apart for the benefit of the son William, in the hands of the daughters, Caroline and Frances, for the use and benefit of his children, and the court below so held.　Appellants, however, contend that they take the absolute title to the one-fifth part that would have been set aside for the use of William had he survived the testatrix.

The testatrix, in devising one-fifth of her estate to each of her daughters, in fee, uses apt language.　They are to be given their respective shares "absolutely."　The direction as to a deceased son's share is expressed in different phraseology.　The share or part devised for the benefit of the deceased son is: "To my daughters, * * * or the survivor of them then living, to be used by them * * * either wholly or in such parts or shares as they, * * * in their discretion, shall deem desirable, for the benefit of the children," etc.　This language precludes the idea of an intention to make an absolute gift of such share to the daughters.　The share was to be *used* by them for the benefit of the children.　The purpose for which the daughters are to take, is definitely fixed by the language employed.　It is for the *use* of the children of the deceased son. No particular form of words or language is necessary, in a gift of property, to create a trust.　It will be sufficient, especially in the case of wills, that such intention is apparent from the whole will, when considered in all its parts, under the circumstances of the particular case.

If the testatrix had intended no provision for the benefit of the children of a deceased son, there was no necessity for revoking the sixth clause of the will, or of changing the fourth. The precise result contended for by appellants would have occurred if the codicil had not been made, so far as the effect upon the children of the deceased son is concerned.　The will and the codicil are to be construed together, in the light of the circumstances surrounding the estate and the testatrix at the time they were severally made.　And, as before stated, it is to

be presumed that in making the change in her will in respect of her grandchildren, she designed and intended to change the disposition of her estate as to them, and understood and intended the language employed by her should have its legitimate and recognized effect in producing that result. It is apparent, we think, that this fifth share was, by the will and codicil, placed in the hands of the daughters, in trust, to be used by them for the benefit of the children of the deceased son. Precatory words used in a will, equally with direct fiduciary expressions, are frequently sufficient to create a trust by implication. (Hill on Trustees, p. 73, and authorities; Perry on Trusts, secs. 112-121.) It is true that the daughters are invested with a large discretion as to the manner in which they shall execute the trust for the use and benefit of these children; but the devise being to them for the use and benefit of the children of the deceased son, the discretion vested in them will not defeat the trust.

It is, however, urged, that there is uncertainty as to the subject and object of the trust. In this we do not concur. The subject matter of the trust is the one-fifth part of the estate set apart by the executors, which would have been to the deceased son had he been living at the death of the testatrix, and the children of such son are the objects for which it was created. The share thus set apart was not to be paid over to the daughters absolutely, or for their own benefit, but for the use designated by the donor in the creation of a trust. The daughters, as trustees of this share, are not invested with discretion to withhold the trust fund absolutely from the *cestuis que trust*. The fund is not theirs, in equity, and they can not make it so by a refusal or neglect to exercise the discretion vested in them. Their discretion as trustees of this fund is subject to the control of the courts of equity, and can not be arbitrarily exercised so as to deprive the beneficiaries of all benefit of the fund.

Much stress is laid upon the words, "wholly or in such parts as they, (the trustees) or the survivor of them, in their or her discretion, shall deem desirable," etc. It is evident, we think, that the testatrix had in contemplation, one son already having died, that there might be the death of others before her decease, and intended making a provision that would apply, in that event, to the shares of each of such sons. As to the children of William, they being minors, the daughters, as their trustees, under this clause might apply this share wholly, at once, for their benefit, or in such part as they might deem most beneficial to them. The trustees were made the judges of what use of the estate was most for their benefit. Undoubtedly, if they deemed it most desirable, they had discretion to invest the funds in their hands for the use and benefit of the *cestuis que trust,* or to provide for their support and education, expending such sum therefor as to them might seem desirable. But it is unnecessary to discuss this branch of the subject, as the decree of the court does not seek to interfere with the discretion vested in appellants, or direct the manner of its exercise. When that discretion is abused, if it ever is, will be the time for a court of equity to interfere.

Both the daughters taking this share in trust for the children of the deceased son, William, are living, and it is unnecessary to discuss or decide whether they hold as joint tenants or not. It is enough that they take no beneficial interest therein, but simply hold the same in trust for the defendants, children of their deceased brother, William. It may, however, be added, that as the survivor is required to use this share for the use and benefit of the children indicated, it is manifest that it was to be kept intact for such use, for if each of the trustees took an equal part, the survivor would be unable, or might be, to use the whole for the benefit of the *cestuis que trust.*

Perceiving no error in this record, the decree of the circuit court is affirmed.

*Decree affirmed.*