## COMMISSIONER OF INTERNAL REVENUE v. BETTS.

### No. 7683.

Circuit Court of Appeals, Seventh Circuit.

Nov. 26, 1941.

536

J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and L. W. Post, of Washington, D. C., for petitioner.

Hugh W. McCulloch and Ned P. Veatch, both of Chicago, Ill., for respondent.

Before SPARKS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner questions a decision of the Board of Tax Appeals absolving respondent taxpayer from any deficiency in income tax for the years 1935, 1936 and 1937.

Respondent has for many years been extensively engaged in the securities brokerage business, being, at the time of the hearing, Chairman of the Board of Governors of the Chicago Stock Exchange. On February 5, 1932, he created a trust, depositing with the trustee certain securities. The original indenture and amendments thereto made in October, 1933, provided that during the settlor's life-time, the income collected each year should be paid, 75 per cent to respondent's mother, and 25 per cent to his wife, and, in case either of them should die, 100 per cent to the survivor, and, if both should die during his lifetime, then, during the balance of his lifetime, be added to the principal. Upon the deaths of the settlor, his mother and his wife, the trust estate was to be divided equally among the respondent's children or their lawful descendants. If his wife or mother should survive respondent and leave surviving no descendants of his, or if he should survive both his mother and wife but leave no descendants, in either instance, the trust estate was to be conveyed to his heirs.

The trustee was authorized to manage the estate and to buy, sell or exchange property and securities. But all purchases and sales, during the lifetime of respondent, were to be as he might direct. Interests of the beneficiaries were not assignable or liable for debts. Respondent waived all power to revoke or alter the trust agreement without consent of one of these: his mother, his wife, his sister, Agnes McCulloch, and his brother, Curtis Betts. But after the death of all these four, respondent, if alive, was to have the right to alter or revoke the trust. The taxpayer is fifty-one years of age, his wife

forty-six. They have two sons, twenty and sixteen years of age. The mother is a widow, at the time of the hearing, eighty-four years of age.

Respondent's wife and mother have received their share of the income. Prior to the creation of the trust, respondent had furnished his mother funds for her support and maintenance. During the years involved, her sole means consisted of her share of the trust income and such additional moneys as respondent gave her. During the three years in question, respondent's brother had an income of approximately $3300, $3900, and $5900 respectively; his sister $7500, $5000 and $7000. The income received by the wife was invested by her in various securities; none of it was used for her support or maintenance.

In 1935, net trust income was $24,273.-13 of which $20,893.65 was capital gain. During 1936 the income was $34,299.79 of which $30,115.36 was capital gain. In 1937 the net income was $9,541.41 and of this, $2,336.70 capital gain. The trustee retained all capital gains and accounted for them in its income tax returns. The remainder was distributed to the wife and mother.

The commissioner levied an assessment for all income, including capital gain, for each of the three years. This action the Board held erroneous. Petitioner now contends that the entire income for each of the years was taxable against respondent under Sections 22(a) and 166 of the Revenue Acts of 1934 and 1936, 26 U.S. C.A. Int.Rev.Acts, pages 669, 727, 825, 895; as an alternative, that the capital gains were taxable against him under Section 167, and, as a further alternative, that the income distributed to respondent's mother was taxable to him because paid in satisfaction of his legal obligation to support her.

▉▉▉ Under Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, liability of respondent under Section 22(a), a general statute covering all income, depends upon whether, after creating the trust, he retained such attributes and incidents of ownership as to continue in him economic enjoyment of the property placed in trust. Obviously, we must find the answer to that question in the facts and circumstances. These include the family relationship and all circumstances which bear upon the creation and operation of the trust as well as the terms and provisions of the instrument itself.

We think the facts here are not within the ruling of the Clifford case. There the trust was for a short term. It could have been terminated immediately after it was created, and upon its termination, the corpus was to revert to the grantor, who was himself the trustee. Here respondent is not the trustee and can not name himself as such. He may not alter, amend or modify the trust agreement without the consent of adversely interested parties. The trust is of long, uncertain duration. The income is distributable to persons other than the grantor and over it he has no dominion. He has reserved no right to hold any of the trust property, though he has retained the right to designate what should be bought and sold. Reason for this reservation evidently lay in his experience in the security business, which furnished justification for belief, upon his part, at least, of desirability of exercise of his judgment for the benefit of his beneficiaries.

The case is not unlike Commissioner v. Branch, 1 Cir., 114 F.2d 985, 987, 132 A.L. R. 839, where the trust was for a comparatively long duration and the corpus was to revest in the grantor only in the event that he should outlive his wife. Even this possibility of reverter was subject to be extinguished if the wife exercised her power to appoint the trust estate. The court there said: "Where the grantor has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the trust instrument, will never regain beneficial ownership of the corpus, there seems to be no statutory basis for treating the income as that of the grantor under Section 22(a) merely because he has made himself trustee with broad power in that capacity to manage the trust estate." It is said that this court has questioned this authority in Graff v. Commissioner, 7 Cir., 117 F.2d 247. What we said was that Commissioner v. Branch was not in point upon the facts of that case.

In the Clifford case the court has given us the rationale, the standard to be applied, and, when the facts come within the rule there stated, that standard must control. But we do not believe the language applicable to a trust which is not a short term one, in which the grantor has divested himself of the economic enjoyment of

the property and his power of revocation is an exceedingly remote and contingent one. Thus in Corning v. Commissioner, 6 Cir., 104 F.2d 329, 332, the court said: "The term 'power' as used in corresponding sections of earlier acts has not been thought to extend to the reservation of a right conditioned upon a contingency that may never occur. Commissioner v. Stokes, 3 Cir., 79 F.2d 256; Higgins v. White, 1 Cir., 93 F.2d 357." But, says the petitioner, the Corning case must fall, in view of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, dealing with sections of the Revenue Act covering federal estate taxes. The United States Circuit Court of Appeals for the Fourth Circuit did not believe so, for in Helvering v. Dunning, 4 Cir., 118 F.2d 341, 344, after Helvering v. Hallock had been decided, it said, "We believe * * * that the Corning case was correctly decided." See, also, Jones v. Norris, 10 Cir., 122 F.2d 6; Helvering v. Palmer, 2 Cir., 115 F.2d 368; Commissioner v. Jonas, 2 Cir., 122 F.2d 169; Helvering v. Elias, 2 Cir., 122 F.2d 171.

In the cases cited by petitioner the facts clearly indicate a retention of the fruits of ownership. Thus in Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037, the corpus was to be returned to the grantor at the end of three years. In First National Bank v. Commissioner, 7 Cir., 110 F.2d 448, after the definite period of three years, the grantor had the absolute power of revocation. In Commissioner v. Buck, 2 Cir., 120 F.2d 775; White v. Higgins, 1 Cir., 116 F.2d 312; Cox v. Commissioner, 10 Cir., 110 F.2d 934, the grantors had retained such broad discretionary powers that they had what was substantially the power to revest in themselves, title to or enjoyment of the trust property. Reuter v. Commissioner, 5 Cir., 118 F.2d 698, involved a revocable trust. In Commissioner v. Barbour, 2 Cir., 122 F.2d 165; Helvering v. Elias, 2 Cir., 122 F.2d 171; and Commissioner v. Woolley, 2 Cir., 122 F.2d 167, the settlor retained the reversion. Compare Commissioner v. Jonas, 2 Cir., 122 F.2d 169, where to our way of thinking, there was even stronger reason for taxation of the grantor than in the present case. Yet the same court held that he was not taxable.

■ Bearing in mind our analysis of the facts and that of the Board of Tax Appeals and the weight to be accorded the findings of the latter, we conclude that the grantor here has not retained the fruits of ownership making him liable for the income of the trust under Section 22. In the words of Mr. Justice Douglas in Helvering v. Clifford, 309 U.S. 331, at page 336, 60 S.Ct. 554, at page 557, 84 L.Ed. 788, "we cannot say that the triers of fact committed reversible error."

■ Petitioner insists that, irrespective of the question of taxability under Section 22, liability existed against respondent under Section 166. This statute is specific in terms, directed at income from property transferred in trust in certain specified manners, and provides that "where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor." In view of the fact that the Congress did not mention reversions, this section deals only with trusts in which the grantor has the power to revoke,—to revest the property in himself. Helvering v. Wood, 309 U.S. 344, at page 347, 60 S.Ct. 551, 84 L.Ed. 796.

■ We think the language of the introductory clause, conclusive against petitioner's contention. There was not vested in the grantor power to revest in himself title to any part of the corpus of the estate. He had the remote power, if he survived the beneficiaries, to revoke the trust, but this was not vested in him but was remote, contingent and uncertain with no assurance of its ever coming into existence. Thus in Helvering v. Dunning, 4 Cir., 118 F.2d 341, 343 the court approved this language: "The grantor is again immune from taxation where he retains only a contingent power of revocation. The development of the statutes and the holdings of the courts all evidence this conclusion. Before 1932, section 166 and its earlier equivalent, section 219(g), provided that the grantor of a trust was subject to an income tax where he had the power to revest in himself title to any part of the trust corpus. However, the Revenue Act

of 1932 declared the grantor taxable when the power to revest was 'vested.' This slight change in terminology seems indicative of a Congressional policy to tax the grantor when his power to revest is 'vested' and to exempt him from taxation when the power is contingent. And the courts so hold—at least where the contingency is beyond the control of the grantor."

But, says petitioner, there was lodged in the grantor, as provided in paragraph 1, jointly with a person not having a substantially adverse interest, the power to revoke the trust and revest the estate in the grantor. This conclusion is based upon the premise that the mother and the wife of the grantor whose consent he must have to revoke were not persons having "a substantially adverse interest." The Board found otherwise.

The trust agreement provides that during the lifetime of respondent his mother shall receive three-fourths of the income and after his death a $7,000 annuity payable out of the income, if possible, but if not, out of principal. In addition she is to be given such additional sums up to $10,000 out of either principal or income as she may request. The wife receives twenty-five per cent of the income. After respondent's death, she is to receive all income in excess of the amount necessary to pay the amounts provided for the mother and after the latter's death also, she is to have all income and, in addition, if at any time the income is insufficient to meet any unusual expenses caused by illness, surgical operations or other similar extraordinary demands, she is to receive such additional funds as the trustee may deem necessary. If no descendant of the grantor survives the mother or the wife, the trust estate is to descend to grantor's heirs and these will be his brother and sister, if they are then alive. The wife's income was not used for living expenses. There is no question but that the income payable to the mother is in excess of any amount which there is legal obligation upon respondent to pay under the Illinois statute. Children are liable under certain conditions for the necessary support of their parents, 1941 Ill.Rev.Stat. Chap. 107, Sec. 1, but the record is silent as to any showing that the amount payable to the mother is necessary for her support.

■■ In this situation, though the beneficiaries are closely related to the grantor, he has given them certain rights which he was not bound to give them, certain income which he was not bound to give them; and over this he has surrendered control. It may be that because of family affection they might consent to a revocation but that fact does not of itself destroy their quality of adverse holding protected by the statute. What Congress had in mind evidently was such a person as has a vested right under a trust agreement to insist upon its performance and can not be compelled to surrender the same. Such persons are both the mother and the wife. We find no justification for reversal of the finding of the triers of the facts that the beneficiaries were adversely interested. The Board has so held in similar instances in which the commissioner has abided by the rulings. E. g., Litchfield v. Commissioner, 39 B.T.A. 1017; Shiverick v. Commissioner, 37 B.T.A. 454. The Supreme Court of the United States in Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S. Ct. 123, 125, 73 L.Ed. 410, 66 A.L.R. 397, said: "Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute." See, also, Commissioner v. Prouty, 1 Cir., 115 F.2d 331, 133 A.L. R. 977.

The cases relied upon by petitioner in this connection disclose instances where the interest of the beneficiary was substantially less than those of the wife and mother here. In some it was in the income and not in the corpus and in others it was subjected to control retained by the grantor. In still others the grantor retained the absolute power to terminate the interest within a short period of time. In Graff v. Commissioner, 7 Cir., 117 F.2d 247, the wife was interested only in the income and not in the corpus. We made no determination there that her interest was not substantially adverse. In Altmaier v. Commissioner, 6 Cir., 116 F.2d 162, the Board, in contrast to its finding here, found as a fact that the wife was not adversely interested.

■ In this connection the commissioner argues that the possibility that respondent may survive his wife, mother, brother and sister and thereby acquire the power to revoke fixes his tax liability under Section 166. But, as we have previously

pointed out, the ownership of that which is contingent upon the happening of future remote events, over which the grantor has no control and which may never come to pass, and is not by Section 166 subject to his control, does not render the income taxable as against him. Commissioner v. O'Keeffe, 1 Cir., 118 F.2d 639; Helvering v. Dunning, 4 Cir., 118 F.2d 341.

 Petitioner insists that under Section 167 capital gains of the trust are taxable against respondent though the trustee has accounted for them and paid income taxes thereon. That section contemplates taxation of the grantor of a trust where any part of the income, in the discretion of the grantor or of any person not having a substantial adverse interest therein, may be accumulated for future distribution to the grantor. This contention, however, is largely based upon the premise that there is no person having substantially adverse interest in the estate and that premise we have disapproved. Furthermore this trust agreement does not contemplate future distribution of funds to the grantor, for he can never obtain any of the capital gains, as we have seen, except upon the happening of a remote, uncertain and improbable contingency. Capital gains were not by the trust agreement to be accumulated for future distribution to respondent but were to be retained and held in trust for the beneficiaries. We approve of the reasoning of the Board and its application of the. statute to instruments involved in Griffin v. Commissioner, April 26, 1939, 39 B.T.A. 1243; Boeing v. Commissioner, 37 B.T.A. 178; Ward v. Commissioner, 40 B.T.A. 225; McLean v. Commissioner, 41 B.T.A. 565; Moore v. Commissioner, 39 B.T.A. 808. We agree that the language of Section 167(a) (1) was not intended to apply where there is no definite provision for future distribution to the grantor but only a contingent possibility over which he has no control. And such was the ruling of the courts as to Section 167 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Acts, page 407, similar in its provisions. Commissioner v. Waterbury, 2 Cir., 97 F. 2d 383; certiorari denied 305 U.S. 638, 59 S.Ct. 105, 83 L.Ed. 411; Bassett v. Commissioner, 33 B.T.A. 182 affirmed per curiam, 2 Cir., 90 F.2d 1004; Sawtell v. Commissioner, 1 Cir., 82 F.2d 221.

Were the settlor liable for tax under the circumstances of this case, grave doubt of constitutionality would arise. Thus in Helvering v. Dunning, supra, after quoting from a legal commentator as follows: "Taxation based upon such distant future right would appear violative of the Fifth Amendment," the court added: "We share this same concern over the constitutionality of an unlimited application of section 166. · See Nichols v. Coolidge, 1927, 274 U.S. 531, 541, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; cf. Hoeper v. Tax Commissioner of Wisconsin, 1931, 284 U.S. 206, 215, 52 S.Ct. 120, 76 L.Ed. 248, 78 A.L. R. 346. The mere reservation of the right to revoke after the expiration of ten or fifteen years might very well fall within the prohibitions of the Fifth Amendment."

 If the regulations go beyond the statute they are void. The scope of Congressional enactment can not be enlarged by a departmental regulation.

The decision of the Board is affirmed.