## COMMISSIONER OF INTERNAL REVENUE v. ARMOUR.

### No. 7576.

Circuit Court of Appeals, Seventh Circuit.

Feb. 2, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Bureau of Internal Revenue, and Michael Cardozo, both of Washington, D. C., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for petitioner.

Alexander F. Reichmann and R. W. Burgeson, both of Chicago, Ill. (Myron D. Davis, of Chicago, Ill., of counsel), for respondent.

Before SPARKS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The question presented by this review is whether the income from a trust estate is taxable to the settlor, who was also trustee,—whether the instrument, surrounding facts and circumstances produce taxability of the grantor within the intent of Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788.

The Board found the facts to be substantially as follows. The taxpayer is the widow of J. Ogden Armour, who died August 16, 1927. He had been president and extensive stockholder of a vast corporation engaged in processing and packing meats and a man of great wealth. Preceding his death, however, his financial reverses had been such as to bring about his insolvency. During his opulence he had given to his wife and daughter, the latter being beneficiary of the trust, large sums of money. That given his daughter was sufficient to yield her an annual income of approximately $150,000.

When Mr. Armour became financially embarrassed, he pledged to his creditors what was considered substantially all his assets. In addition, his wife and daughter voluntarily surrendered and included in the pledge all property they had received from him. The assets pledged were eventually taken by foreclosure; no part of them was returned to the pledgors. The daughter later inherited some one-half million dollars from her grandmother but this she turned over to cousins to reimburse them for substantial property which they, too, had pledged to her father's creditors. As a result she had left no property or income of her own.

Mrs. Armour had an adequate estate inherited from her father. Her husband in 1925 had some equities in certain properties which the creditors did not accept. Out of her own resources, in that year, she purchased some of these, including 500 shares of capital stock of Universal Oil Products Company, then of doubtful value, paying therefor $1,500,000. Subsequently the stock became valuable, and, on January 6, 1931, she sold it for $9,500,000. The dividends from this stock had come to her regularly after they began in 1926 and, the daughter's income having ceased, the mother made substantial payments to her, from time to time, of varying amounts until April, 1929 when a regular allowance of $10,000 per month was provided and paid to her until formation of the trust.

In 1931 the mother decided to create a trust for the benefit of her daughter in order to assure the latter of an income of $10,000 per month and to have the trust set up in such a way as might make her daughter independent and her estate unaffected by the mother's financial condition. She desired also to make reparation to the daughter for the sacrifice the latter had made at the time of her father's financial difficulties.

The trust, executed on December 30, 1931, declared that the mother held certain securities deposited with her as trustee with power to manage and control the same, to invest and reinvest the principal, to collect the income, and to sell, lease, mortgage or exchange as she might deem wise until final distribution, with the same discretion as if the property were her own. She retained the right to convert the property into commodities as a protection against inflation, and to use any part of the trust estate for the purchase of life insurance policies upon her daughter's life or annuities for her and to pay the premiums and cost thereof out of the estate. Such insurance policies and annuities were to be payable to the mother as beneficiary at the death of her daughter and to her estate, if she should die before the daughter.

The settlor as trustee was charged to pay to her daughter all income and such

part of the principal as should be necessary during the latter's lifetime for the daughter's support, maintenance and comfort. But upon the death of the daughter, all remaining part of the trust estate was to be delivered to the mother if living, and if not, to her estate.

The daughter had no right to assign, transfer or incumber the estate or any of its income. The trustee could resign at any time by giving notice and, in the event of her resignation or death, a bank was to act as successor trustee. The mother expressly renounced any power to change or revoke the trust.

At the time the mother was 62 years old; the daughter, an only child, was 34, married and had no children. She has since adopted two. The trustee purchased no insurance policies or annuities upon the life of the daughter, and no commodities. Whenever the trust income was insufficient to produce $10,000 a month, the mother voluntarily made up the deficiency. During the years involved, these deficiencies aggregated some $38,000.

On December 16, 1935, Mrs. Armour resigned as trustee and was succeeded by the bank. She then executed another trust agreement including therein a surrender of her reversion. Under the terms of this instrument, after 1935, no part in the estate could revert to her. During the years 1932, 1933, 1934 and 1935, Mrs. Armour did not include the income of the trust in her income tax report but each year filed a fiduciary return, reporting as trustee the income she had received and distributed to her daughter. Capital gains were accumulated, no part thereof ever being paid to either mother or daughter. The Board declared these taxable against the mother and no review of that part of the decision is sought.

Upon these facts the Board found that the mother created the trust not in pursuance of any legal obligation, promise or contract but solely as a voluntary gratuitous act, in satisfaction of a desire to assure the daughter of adequate income and to make partial reparation to her for her sacrifice in helping her father.

The Commission contends that the mother is liable for the tax upon income under Section 22(a) of the Revenue Acts of 1932 and 1934, or, in the alternative, under Sections 166 and 167 of those Acts. U.S.C.A. Int.Rev.Code, Title 26, Secs. 22(a), 166 and 167.

Section 22(a) taxes all income of every taxpayer and whether the mother is taxable under that section depends upon whether the income from the property transferred to herself as trustee is, because of the facts and circumstances, income from property of which she is still in substance the owner. It is the contention of the Commissioner that the settlor retained all of the elements of economic enjoyment in the income found in Helvering v. Clifford, supra, essential to taxation of the settlor, as one possessing all of the attributes of economic enjoyment of income from property transferred. In that case the trust was (1) for a short term; and, (2), for the benefit of the settlor's wife; (3), the grantor retained the "absolute discretion" to determine when payments should be made to the beneficiaries and complete control over the property; and, (4), at the end of five years the property was to revert entirely to the settler. The court [309 U.S. 331, 60 S.Ct. 557, 84 L. Ed. 788] found that the inclusion of all these elements left in the grantor, dominion and control of the property so that he was taxable upon the income therefrom, saying that the trust did not effect any substantial change other than "a temporary reallocation of income within an intimate family group"; that, inasmuch as the income remained in the immediate family of the grantor and he retained control over all investments, he had "complete assurance that the trust would not effect any substantial change in his economic position," and that "[he] retained the substance * * * of all the rights which previously he had in the property."

Here the powers as retained by the settlor were not so extensive. The trust was not for "a short term." It did not effect merely "a temporary reallocation of income within an intimate family group," but was for the lifetime of the daughter, who had established her own home and family ties elsewhere and was not a member of the intimate family of her mother. Therefore the immediate family intimacy present in the Clifford case was lacking. Then, too, the trust here effectuated a substantial change in the settlor's economic position. The income became irrevocably the property of the daughter. The inspiring motive was in the desire, as the Board found, of the mother to provide for the support of a daughter who had sacrificed her property to aid her father. As the Board said, the taxpayer, the settlor, in-

tended to deprive herself of the economic benefits in the property for her daughter's lifetime and within three years surrendered entirely her reversionary interest. From these circumstances the Board rightfully concluded that the settlor did not remain in substance the owner of the property to such an extent as to be taxable with its income.

That the short term of the trust is of moment and was so considered in the Clifford case is apparent from the opinion of Mr. Justice Douglas, in his statement that the transaction worked only "a temporary reallocation of income within an intimate family group." That this feature was in the minds of other members of the court is apparent further from Mr. Justice Roberts' dissenting opinion, in which he remarked that "if some short term trusts are to be treated as non-existent for income tax purposes, it is for Congress to specify them."

In opinions of lower courts, since announcement of the Clifford case, this element has been considered almost generally an essential to liability of the grantor for the tax on income from a trust. Thus, in Commissioner v. Branch, 1 Cir., 114 F. 2d 985, 132 A.L.R. 839, the court refused to tax a grantor who, though he reserved broad powers of management, created a trust to run for the life of the beneficiary, his wife. A similar ruling was made in the Second Circuit, without opinion, in Helvering v. Palmer, 115 F.2d 368, and in the Tenth Circuit in Jones v. Norris, 122 F.2d 6, which involved a twenty-year trust. In White v. Higgins, 1 Cir., 116 F.2d 312, the court emphasized as important the extent of the settlor's continued dominion over the corpus. In Commissioner v. Berolzheimer, 116 F.2d 628, the Second Circuit extended the rule of the Clifford case to a ten-year trust. The same court, in the summer of 1941, in three cases, Commissioner v. Barbour, 122 F.2d 165, Commissioner v. Woolley, 122 F.2d 167, and Helvering v. Elias, 122 F.2d 171, likewise attributed great import to the short term. In the first of these three cases, the trust was for six years sixteen days; in the second, six and one-half years, and in the third there was power to revoke within three years. See, also, Commissioner v. O'Keeffe, 1 Cir., 118 F.2d 639. Because of the temporary character of the attempted alienation the court was impelled in each case to decide that the settlor should be charged. The same court in Commis-

sioner v. Jonas, 122 F.2d 169, refused to tax the settlor where the original term of the trust was for ten years but was subsequently extended. Judge Learned Hand, in Helvering v. Elias, 2 Cir., 122 F.2d 171, 172, after commenting that the ordinary rule that a person has property in a thing if he has untrammelled freedom to use it as he wills and may invoke legal remedies to protect that freedom, is not, under the Clifford case, applicable to the decision of whether a taxable interest has been retained by the settlor, remarked that this rule of property no longer applies in cases involving such an issue but that the court must look to the whole "nexus" of relations between the settlor, the trustee and the beneficiary and if it concludes that in spite of their changed legal relations the three continue in fact to act and feel toward each other as they did before, the income remains the settlor's. However, he proceeded thus: "Obviously, the consequences of an inflexible application of such a doctrine would be extremely drastic; for example, the income of an equitable life estate created by a father for his son would be taxed to the father so long as he lived. The court had no such revolutionary purpose and very carefully protected itself from such an interpretation of its decision. For, while it is true that the prime consideration is whether the income remains within the family, there are two other circumscribing factors: the length of the term and the powers of management reserved to the settlor." Judge Hand's dictum that to tax the income of an equitable life estate created by a father for his son would be revolutionary, if followed in the decision of this case, would be well-nigh conclusive against the contentions of the Commissioner. Compare Jones v. Norris, 10 Cir., 122 F.2d 6.

■ We agree with the expressed consensus of opinion, therefore, that while not always decisive in itself, the term of the trust is of great weight and frequently determinative.

■ Another important element, under the Clifford case, is the identity of the beneficiary. Mr. Justice Douglas seems to have laid emphasis on the fact that the beneficiaries there were members of the grantor's immediate family group and that the trust accomplished reallocation of income within "an intimate family group." The Board, since this decision, has in at least one case suggested as a yardstick the ques-

tion of whether the grantor is under any legal duty to support the relative, Elizabeth K. Lamont v. Commissioner, 43 B.T.A. 61. In Kraft v. Commissioner, 3 Cir., 111 F.2d 370, certiorari denied 311 U.S. 671, 61 S.Ct. 32, 85 L.Ed. 431, and in Commissioner v. Chamberlain, 2 Cir., 121 F.2d 765, the court indicated that the fact that the beneficiaries of a trust are members of the grantor's family is of itself not enough to bring the case within the Clifford rule. In Altmaier v. Commissioner, 6 Cir., 116 F.2d 162, certiorari denied 312 U.S. 706, 61 S.Ct. 827, 85 L.Ed. 1138, and Commissioner v. Central Nat. Bank, 119 F.2d 470, the court refers to Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, as giving additional stress to the "family solidarity" test. We agree with the Board that the family situation is not such as to bring this case within Helvering v. Clifford.

Other elements considered by Mr. Justice Douglas were identity of the trustee and the control retained by the settlor, including reversion of the estate, after a definite period, to the settlor. These elements we do not consider it necessary to discuss as, in the present instance, the settlor was the trustee and retained control over the assets of the trust, including reversion to her or to her estate upon the death of her daughter.

But we are confronted by a serious lack of sufficient proof with regard to two elements, the length of the trust and the family relationship. As the Board pointed out, the trust was not for a short time but for the lifetime of the daughter. This in itself, according to Judge Hand, negatives tax liability. But, more than that, the beneficiary, as the Board found, though closely bound to the settlor by ties of blood and affection, had left her mother's family and established her own family ties and lived with her husband in her own immediate family. Nor, the Board found, was there legal obligation upon the mother to contribute to the support of her daughter.

The Board, in deciding the Clifford case, found the facts and held the settlor taxable. Mr. Justice Douglas in his opinion remarked that the court could not say "that the triers of fact committed reversible error" and that the failure of Congress to adopt a rule of thumb for the type of trust involved must be taken to do no more than to leave to the triers of facts the determination of whether on the evidence of each case the grantor remains the owner of the property under Section 22(a). The Board, with the Clifford case in mind, found here that the settlor did not reserve the economic enjoyment of the income of this trust estate and, just as the Supreme Court felt in the Clifford case, so we feel here that the Board having found as an ultimate fact that the settlor did not retain the economic enjoyment to such an extent as to render her subject to the tax upon the income, we should not, indeed may not, disturb the finding. Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751; Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343.

The Commissioner asserts that if liability is lacking under Section 22(a), it exists under Section 166. That section provides for taxation of the settlor where at any time during the taxable year the power to revest in the grantor any part of the corpus of the trust is vested in the grantor or in any person not having a substantially adverse interest or in the two together. We agree with the Board that there is no possible reasonable construction of the trust agreement whereby the grantor can be said to have the right to revest the title in herself or whereby she or the beneficiary, as a person not adversely interested, had such joint right. The trust could be terminated upon the happening of either one of two events, first, the death of the daughter; second, the distribution of the entire principal to the daughter made possible by the provisions of the trust. The policies of insurance mentioned, in the absence of distribution to the daughter, would under the terms of the trust remain a part of the corpus and the income therefrom would by the same token have gone to the beneficiary. We are not concerned, in consideration of liability under Section 166, with the right of reversion in the settlor. In the language of the Supreme Court, there is no hint of power to revest, which is essential under the statute. Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed 796; Commissioner v. Betts, 7 Cir., 123 F.2d 534; Jones v. Norris, 10 Cir., 122 F.2d 6, at page 9.

The Commissioner further contends that the settlor is taxable under Section 167, which creates liability where the income of a trust, at the discretion of the grantor or of any person not having a substantially adverse interest may be held or accumulated for future distribution to the

grantor. But the instrument here discloses, as the Board said, that it was the intention of the grantor that all net income, except capital gains, should be distributed to the beneficiary and, as the Board concluded, the daughter, if she had seen fit so to do, could have compelled distribution of all income, with the exception of capital gains, to herself. We agree with the Board that it would require a strained construction to hold that the settlor in her discretion could have accumulated for distribution to herself, in the manner creating liability under Section 167, any of the income other than capital gain. Commissioner v. Betts, 7 Cir., 123 F.2d 534, 535.

Finding no error in the Board's conclusions and being unable to say as a matter of law that its findings should be disturbed, the decision is affirmed.