## JERGENS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10570.

Circuit Court of Appeals, Fifth Circuit.

June 15, 1943.

Rehearing Denied July 17, 1943.

Carl M. Jacobs, of Cincinnati, Ohio, for petitioner.

Joseph M. Jones, Sewall Key, Helen R. Carloss, and Willard H. Pedrick, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

The Tax Court sustained deficiencies assessed by the Commissioner with respect to 1936, 1937, and 1938 income tax returns of Andrew Jergens, and the taxpayer has petitioned for review. The correctness of the decision depends upon whether or not the entire income of a trust created by petitioner's wife was taxable to petitioner.

Prior to December 31, 1934, Mrs. Jergens had received 923 shares of common stock in the Andrew Jergens Company by gift from the taxpayer, and she had purchased two insurance policies on the life of her husband aggregating $255,000. On that date she created a trust, naming as co-trustees the First National Bank of Cincinnati and the taxpayer, and conveyed to the trustees 685 shares of the stock and the two policies of insurance. The trust instrument provided that the income from the stock should be used to pay the expenses of the trust, the premiums on the insurance policies, and an annuity of $1,700 to a third person. The balance was to be paid to the trustor during her life. The trust was for the life of Mrs. Jergens, unless revoked earlier by the act of the taxpayer after five days notice to the co-trustee.

The trustees were given unlimited power to hold, manage, and control the trust properties, except that the bank was required to abide by all written instructions respecting the trust property given to it by the taxpayer, who alone had the further power to vote the stock and to appoint investment counsel for the guidance of the trustees. The taxayer alone had power to withdraw all or any part of the corpus of the trust, except that this power was limited with respect to the insurance in that the consent of the trustor was a prerequisite to withdrawal. He also had power to alter, amend, or modify the trust as he saw fit, or to revoke it in whole or in part, with the single exception that he did not have power to make the proceeds of the insurance payable to his estate.

During the tax years here involved, the trust income was disbursed in accordance with the original provisions of the instru-

ment, and the income taxes thereon were paid in part by the trustees and in part by the beneficiaries. The Commissioner determined that the whole of the trust income was taxable to the petitioner by reason of his unfettered dominion and control over the income-producing properties and his unlimited power to take, or to control the disposition of, the income produced thereby.

■ With respect to the shares of stock, which were the only income-producing properties in the trust estate, and the income thereof, the taxpayer was given control so absolute as to be consonant with full ownership. The trust instrument gave him unlimited power to withraw the stock from the trust or to alter or amend the provisions of the trust relative to the income thereof in any way. After consideration of these provisions of the instrument, the Commissioner, the Tax Court, a majority of this court, and petitioner himself agree that the taxpayer had complete command over the stock and its income during the tax years involved, and that he might have taken the stock or its income for himself or disposed of it otherwise at his pleasure.

■ In Section 22(a) of the respective Revenue Acts, 26 U.S.C.A. Int.Rev.Code § 22(a), here applicable, Congress intended to use the full measure of its taxing power.[1] It is the long-settled course of tax jurisprudence that such control over income warrants the imposition of the tax incidence of that income upon the person who commands its disposition whether he takes it for himself or not.[2] This principle is not to be limited in trust cases to situations where the grantor has retained controlling powers; the determinative consideration is the existence of actual dominion over the property whether it is retained or acquired.[3]

Affirmed.

WALLER, Circuit Judge (dissenting).

It seems to me that the majority of the Court has looked at the tail and the ears and not at the dog. They have paid scant attention to the eyes, ears, bone, meat, and muscle. In the examination of the trust agreement by the majority, major attention is directed to two provisions: (1) That trustee could alter, amend, revoke, or terminate the trust at will; (2) that trustee could withdraw any part of the trust except the life insurance policies.

Let us examine the whole instrument and from that determine the intent of the parties and the legal effect of the document.

The following features of the trust indenture, not adverted to in the majority opinion, seem to merit examination:

(1) The Grantor, in consideration of $1.00 "and in further consideration of the agreement on the part of the trustees to accept and perform the Trust hereinafter created, does hereby assign, transfer and deliver to the Trustees, the property listed on Schedule A * * *

"To Have and To Hold all and singular the above granted property and every part thereof unto said Trustees, their successors and assigns, *In Trust Nevertheless,* for the following uses and purposes, and with the following powers, to-wit:" (Let it be noted that the assignment is in trust, and not an absolute assignment as held by the Board and the majority of this Court.)

(2) Trustees might *"buy,* sell, invest, and reinvest Trust funds." (If trustees could appropriate or convert stock to their own use, why the provision that they could "buy" it?)

(3) Trustees were authorized to expend income or principal whenever deemed necessary "for the protection of the trust property". (Indicating that principal and income could not be used except for trust purposes.)

---

[1] Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Helvering v. Midland Life Ins. Co., 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. —; Reuter v. Commissioner, 5 Cir., 118 F.2d 698.

[2] Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Corliss v. Bowers, 281 U. ⸱

S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 544, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055.

[3] Richardson v. Commissioner, 2 Cir., 121 F.2d 1. Cf. Commissioner v. Betts, 7 Cir., 123 F.2d 534; Jones v. Norris, 10 Cir., 122 F.2d 6.

(4) Trustees were directed to collect income, and (they) "*shall pay* costs, taxes, charges and expenses * * * and *shall* use the net income" (1) To pay life insurance premium on policies owned by Grantor; (2) To pay $1700.00 to an aunt; (3) To pay remaining net income to Grantor. (Does this indicate unfettered command? The command "shall" was by the Grantor—not by the Trustee.)

(5) In event of death of Grantor prior to termination or revocation of trust by husband *then* all Trust property shall be transferred and delivered to husband. (Does this indicate that husband could appropriate the stock at will? He had to outlive his wife to get it.)

(6) Trustees *shall* render an annual account showing "sale and purchase" of any securities. (Is this an attribute of unfettered command by the husband?)

(7) The Trustees are to be liable for gross negligence. (Does this connote unfettered command?)

(8) Trustees may register securities but the statement furnished annually to Grantor or beneficiaries *shall* show in what name securities are registered. (Is this provision consistent with unfettered command?)

We will not lose sight of the fact that the wife had owned the corporate stock involved for twelve years before she created the trust. She acquired the stock in 1922. This is not a case where the settlor conveyed stock to himself as trustee for another and retained "unfettered command", or where the property was put by him into the trust, without losing control of same, but this is a case where a wife, freely and voluntarily, created a trust for her own benefit and gave to her husband as trustee a free rein in the management of it, which is exactly what the law of Florida does without any written instrument.[1]

"Unfettered command" of the wife's property is placed by statute in the husband as fully as the trust indenture did, and the trust agreement added little if anything to the husband's power except his power to deal with the property after death of the wife, should it occur during his life.

Thus, because a definite written instrument was executed, providing for certain mandatory disbursements of wife's income, etc., by her husband trustee, it is said by the Board and by the majority of the Court that the trustee in the instrument is given unfettered command of his wife's property, when the instrument is in substance but a restatement of the control which he already had by statute in Florida, the state of their domicile, with the result that he is condemned to pay her income taxes.

In this case the Court has confused a valid title to the stock (which the wife had owned for twelve years) with a pretended transfer by a settlor of a trust in which he *retained* to himself all of the attributes of ownership in order to escape income taxes. No argument is made that any such purpose was present here. There is not the slightest suggestion in this record that any saving of income taxes could possibly accrue to the taxpayer by the execution of the trust indenture. There was not the remotest possibility of a tax saving to him to be accomplished by the trust agreement here under consideration.

Much is said about "unfettered command", but unfettered command is not the test unless the unfettered command is *retained* by the grantor or settlor of the trust whereby he shall keep, as long as he lives or desires, all of the attributes of ownership except title in name. There surely is no such monstrous doctrine in the law that a man cannot take and manage his wife's property without being condemned to pay her taxes. The law of Florida not only does not prohibit it but casts the duty upon him.

It is urged that the trust instrument gave the husband the right to "withdraw" the stock from the trust, but no lexicographer, nor Court, in considerate judgment, has ever heretofore construed withdraw to mean "expropriate; convert to one's own use; embezzle; purloin; or take, steal, and carry away."

The stock in question was not an "absolute assignment" of the stock as held by the Board and as assumed by the majority. The stock was assigned to the husband and the Bank as Trustees "To have and to hold * * * unto said Trustees, * * * *In*

---

[1] Sec. 5867, C. G. L. of Fla., F.S.A. § 708.03, provides: "The property of the wife shall remain in care and management of the husband but he shall not charge for his care and management, nor shall the wife be entitled to sue her husband for the rent, hire, issues, proceeds, or profits of her said property."

*Trust Nevertheless,* for the following uses and purposes", etc. Furthermore, the trust agreement specifically provided that if grantor predeceased her husband, *"then* upon the death of the Grantor, all of the trust property shall be transferred and delivered to her husband" * * * "if he be living". The word "then" seems to have been overlooked by the Court. Yet the Court is holding that since the husband had the power to "Withdraw" the stock from trustee management all he had to do to acquire the stock was to take it. The trust agreement provides that he had to die after his wife in order to get it unless it was sold and bought by him.

If the husband could violate his trust and pillage his cestui que trust, with impunity and immunity, why were the trustees required to make an annual account to the wife, and why should they furnish her facts as to the registration of the stock, and why should it be necessary that the stock should belong to him upon her death if he could take while she was alive? And why command the payment of an annuity to Aunt Lida and the net income to grantor if it was contemplated that her husband could rifle the estate of all its property and convert same to his own use? Why not hold that the wife merely made this request: "Andrew, I wish you would please pay Aunt Lida $1700.00 a year. And won't you please keep up my insurance, and won't you please let me have some spending money of my own?" This trust indenture was not a prayer. It was a command, and when the husband accepted the trust he was bound to carry it out, or to revoke it, or to alter it. He could not pillage it. Nor did he try. He carried it out. He could have withdrawn the stock from the trust management and terminated the trust as to this stock, whereupon he would have been required to have returned it to the cestui que trust. When a trust is terminated the property is distributed to the beneficiaries—not appropriated by the trustee, and when a trust is terminated as to a portion of the property the same thing happens as to such property in a country where honesty and fidelity of a fiduciary is required. The income in this case was appropriated by the grantor to specific purposes and her husband was not one of the purposes until and unless she died first. And that had not happened during the years in question.

No case is cited either by counsel for the Commissioner or in the majority opinion which taxes the trustee with the income of a valid trust except in instances where the trustee was the settlor of the trust and where he retained in himself full and complete command over the corpus of the trust as if he had never parted with the legal title. In Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 556, 84 L.Ed. 788, the rationale of that case was stated as follows: "And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned."

In Richardson v. Commissioner of Internal Revenue, 2 Cir., 121 F.2d 1, 2, the trustee was the settlor of the trust which provided that the settlor and trustee during his lifetime might " * * * cancel and terminate this agreement * * * and upon such termination and cancellation the said H. Smith Richardson (trustee and grantor) shall be entitled to receive the corpus of the trust fund absolutely and free from all trusts." No such provision is in the trust agreement here under consideration unless the Court construes the word "withdraw" to confer upon the trustee the right to appropriate and convert to his own use the stock withdrawn from trust management, contrary to every known concept of fiduciary responsibility.

In Commissioner of Internal Revenue v. Betts, 7 Cir., 123 F.2d 534, it was held that the grantor of the trust was not liable for the income tax on the property.

In Jones v. Norris, 10 Cir. 122 F.2d 6, the grantor created a trust in favor of his children and reserved the right to himself to make such further changes as the grantor deemed fit and proper in connection with the trust and its management, but not the power to revoke the gifts to the beneficiaries. The lower Court held, and the Tenth Circuit Court of Appeals affirmed, that the grantor of the trust was not taxable for the income. It is submitted that no case has been cited in the opinion that supports the holding of the majority in this case.

If the trustee in this case had been the owner of the stock in question, and had

been the donor in the trust instrument, and had provided that he could revoke the trust at will, and thereupon the stocks should revert to him, or if it had provided that the income was reserved to him, and especially if it appeared that the trust indenture was intended to divide, or evade, the tax liability, I would heartily concur in holding the trustee liable, but in this case there cannot possibly be any saving of income taxes to the taxpayer, nor was the trust indenture drawn with that intent.

It is not the function of the Court to discourage, or destroy by taxation, the right of a wife to have her separate property managed by her husband, particularly when that is the duty of the husband under the law of the domicile of the husband and wife involved in this controversy.

It seems clear to me that the income from this trust estate should be taxed to the grantor under Section 166 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Code § 166.