## COMMISSIONER OF INTERNAL REVENUE v. KATZ et al.

### No. 8184.

Circuit Court of Appeals, Seventh Circuit.
Nov. 24, 1943.

Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, N. Barr Miller, and L. W.

Post, all of Washington, D. C., for petitioner.

Max Swiren and Herbert Portes, both of Chicago, Ill., for respondents.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue from a decision of the Board of Tax Appeals (Tax Court of the United States), finding no deficiency in respondents' income taxes for the year 1937.[1]

On April 5, 1937, Meyer Katz executed four separate written declarations of trust, one each for the benefit of his wife, Helen Katz, and their three children, all of whom were minors during the taxable year, except one who became of age during such year. The trust for the benefit of his wife is not involved in this litigation. The provisions of the trust instruments for each of the children are identical, except for the name of the child specifically designated as the primary beneficiary and the number of corporate shares transferred to each trust. We shall, therefore, as did the Board, consider the trust for the benefit of Stanley Michael Katz. Whatever is said with reference to the trust in his favor is equally applicable to those in favor of the other two children.

For many years prior to the execution of the trusts, Meyer Katz was president of Rival Packing Company and owned one-fourth of its outstanding capital stock. Also prior to the execution of such trusts, he entered into an employment contract with the Company for a term of years upon a fixed salary, plus a percentage of the Company's profits. His compensation under such employment contract amounted to more than $48,000 for 1937 and more than $65,000 for 1938.

The trust instrument expressly recited grantor's desire "to make suitable provision whereby sufficient property may be accumulated for the benefit of my son, Stanley Michael Katz, so that he may, at a future date, be financially independent and capable of caring for himself." The grantor further stated that he would "continue to support, care for and maintain my son out of my individual property and income without regard to, and entirely separate from, the property declared in the trust herein created." At no time since the creation of such trusts, including the taxable year in question, has any of the income therefrom been received by the grantor, nor has any of such income been used for the support, care and maintenance of his children. In accordance with his express intention, grantor has at all times provided for the support, care and maintenance of his children during their minority from his own property and income.

Under the terms of the trust, the grantor was precluded from receiving any portion of the income which was required to be distributed to each child during his or her lifetime. In the event of the death of a child prior to the termination of the trust, the income was to be distributed to the lawful issue of such child, but in case such child died without issue during the life of the trust, the income was to be distributed in equal shares to grantor's wife and children surviving. In this connection, it is provided: "The trustee may, in his discretion, at any time and from time to time, withhold and accumulate any of the net income payable to any of the foregoing beneficiaries and/or apply any or all of such income for the benefit of such beneficiaries." In the event the trust was terminated by a lapse of time or otherwise, all accumulated net income was to be paid to the beneficiaries entitled to share in the distribution of the corpus.

By Par. 10, the trust could be terminated only by delivery to the trustee of a written instrument directing such termination, executed as follows:

"(a) Jointly by myself, and my wife, Helen Katz, until my son, Stanley Michael Katz, reaches the age of twenty-one (21) years;

"(b) Jointly by myself and my son, Stanley Michael Katz, after my son, Stanley Michael Katz, reaches the age of twenty-one (21) years, or after the death of my wife, Helen Katz, whichever should first occur."

Upon grantor's death, the corpus was to be distributed to the respective primary beneficiaries when he or she reached the

---

[1] Before the Board, taxes for the year 1938 were also involved. That case was consolidated for hearing and decision with the case for 1937. Appeal was perfected only in the latter, with a court order suspending further proceedings in the former until final decision in the latter.

age of twenty-five years. In the event any primary beneficiary predeceased grantor, the corpus was to be distributed in the same manner as was the income under a similar contingency. In the event that all of grantor's children predeceased him without leaving issue surviving grantor, then the entire corpus was to be distributed to grantor's wife, if she survived him; if not, then the corpus was to be distributed to grantor's heirs-at-law. The agreements, to avoid the rule against perpetuities, set for each of the trusts a maximum duration of twenty-one years after the death of the survivor of grantor, his wife and children.

The agreements designated a successor-trustee, with provision, in case of his inability to serve, for the appointment of such person by grantor's wife and, after her death, by a majority of his children. The agreements concluded with the declaration on the part of the grantor that he held the trust stock "solely for the uses, purposes and trusts aforesaid and not for my own use or benefit."

The contested issue is whether the 1937 income from these three trusts was taxable to the grantor. Petitioner contends that it was, under Secs. 22(a), 166 and 167 of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Acts, pages 825, 895.[2] The Commissioner, before the Board, relied solely on Secs. 22(a) and 166, but the Board decided there was no liability under any of the three provisions.

Petitioner, in support of its contention that Sec. 22(a) is applicable, relies almost entirely upon Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 557, 84 L.Ed. 788, and cases which have followed. We think it would be well near useless to attempt to analyze the cases which have sought to apply or distinguish the doctrine of the Clifford case, and we shall not do so. It appears from such cases that there is some contrariety of opinion as to the extent to which the doctrine of that case should be given effect. It also appears that a decision must depend upon the facts of each case, that is, the terms of the trust instrument, together with all relevant factors shown to exist.

We agree with the Board that the instant case is distinguishable from the Clifford case. True, there are some elements in common, most noticeable of which are the broad powers of management vested in the trustee. Such matters of similarity, however, are of little consequence and certainly not controlling when considered in connection with other provisions, which, in our judgment, clearly remove the instant situation from the rationale of the Clifford case. The trust in Clifford was of short duration, while in the instant case it is long term in character, having an indefinite and at all times unascertainable duration. Of course, the trust duration is not conclusive, but it is a significant circumstance. Retention by the grantor of economic benefit is more readily attributable in a trust of short term duration. Under the circumstances of the Clifford case, conspicuous among which was a short term trust, the court concluded that there was "but a temporary reallocation of income." On the other hand, in the instant case both the income and corpus, due largely to the long term nature and indefinite existence of the trust, amount to a final disposal which may be characterized as permanent. In Clifford, the trust property was to be returned to the donor in a comparatively short period, while here it will never be returned, except on the contingency of revocation, hereinafter discussed in connection with Sec. 166.

The Commissioner contends that the rule in the Clifford case was made applicable to long term trusts in Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L. Ed. 154. No express holding was made to this effect, but that the Supreme Court held such a view may be inferred from the fact that in the case of the John Stuart trust the court failed to pass upon the applicability of Sec. 22(a) for the reason that the Board as the trier of the facts had made no finding as to its applicability. The most that can be inferred, however, is that the mere fact of a long term trust is not sufficient to preclude the applicability of this section. In addition to the terms of the trust instruments themselves, the Board heard oral testimony which disclosed unquestionably that the trustee administered the trust consistent with the interpretation now sought by respondents. An independent certified public accountant

was retained, who kept separate bank accounts, books and records for each trust. All investments were carried in the name of Katz as trustee for the particular trust concerned. Checks were all drawn in the name of the trustee upon the appropriate account. The undistributed income was invested in government bonds.

Furthermore, the Board, among other things, found: "Neither of the three trusts here in question was created as a mere form for the purpose of tax avoidance, but was a genuine, valid, subsisting trust created by petitioner Meyer Katz for the benefit of the specifically named child, with specifically designated contingent beneficiaries other than the petitioner himself. The accumulated net income of the trust was definitely and permanently disposed of by the provisions of the trust instrument, with no possibility of it ever being distributed to petitioner even if the trust were terminated by revocation during petitioner's lifetime." The Board specifically considered whether the grantor "retained such incidents and attributes of ownership that he continued to possess the economic enjoyment of the property or the fruits of such property placed in trust," and found that he did not.

▆▆▆▆ Notwithstanding petitioner's argument to the contrary, we are of the view that such findings must be accepted. We have recently so held in Commissioner v. Armour, 7 Cir., 125 F.2d 467, 471, and in Williamson v. Commissioner, 7 Cir., 132 F.2d 489, 492. See, also, Commissioner v. Betts, 7 Cir., 123 F.2d 534, 539. In the Williamson case, we reviewed the authorities, including those now relied upon by petitioner, and shall not repeat our discussion in this respect. Assuming, however, that we have the right, as urged by petitioner, to substitute our judgment for that of the Board, we think such right should be exercised with extreme caution. In the instant case, we find no reason for so doing; in fact, it is our judgment that the Board correctly determined that the income of the trusts in question was not taxable to respondents under Sec. 22(a).

In support of its position that the trust income is taxable to respondents under Sec. 166, petitioner points out that the wife's power to join the grantor in revoking the trust was operative during the taxable year. Such appears to be the case by reason of the trust provision which provided for termination of the trust by the grantor and his wife until such time as the primary beneficiary reached the age of his or her majority, together with the fact that such beneficiaries were minors during the taxable year. It should be noted, however, that one of such beneficiaries reached the age of her majority August 24, 1937, and after that date her consent would have been required. Under the terms of the trust, the wife, upon the death of one person, would receive a one-third interest in the corpus and income of the trust, and upon the occurrence of additional contingencies could become the sole beneficiary. It is contended by petitioner, as a matter of law, that the wife under such circumstances, had no substantial adverse interest in either the corpus or income therefrom during the taxable year.

Here again we are met with a finding of the Board that the power of revocation was not vested in respondent alone but "was vested in him jointly with designated persons, each of whom had a substantial adverse interest in the corpus as well as in the income of the trust." Presented with the same contention, under a situation in many respects similar to the instant one, this court in Commissioner v. Betts, supra, accepted the findings of the Board of Tax Appeals that certain members of the family, including a wife and mother, had a substantial adverse interest. In so doing, we stated (page 539 of 123 F.2d): "We find no justification for reversal of the finding of the triers of the facts that the beneficiaries were adversely interested. The Board had so held in similar instances in which the commissioner has abided by the rulings. (Citing cases.)"

▆▆▆ The fact that those found to have an adverse interest were members of the donor's immediate family—wife and children—may afford occasion for close scrutiny of the situation, as suggested in Helvering v. Clifford, supra. It has not been held, however, that such fact alone calls for the application of Sec. 166. If family income is to be taxed as a unit it is, so we think, as suggested in Commissioner v. Prouty, 1 Cir., 115 F.2d 331, 336, 133 A.L.R. 977, a matter for Congress rather than the courts. As the law stands now, it is at most only one of the elements to be considered by the trier of the facts. While we are of the view that petitioner's contention with reference to this section presents a close question, yet we are not

persuaded that the Board's finding is erroneous or that our judgment should be substituted therefor.

Petitioner, in arguing for the applicability of Sec. 167, relies upon Helvering v. Stuart, 317 U.S. 154, 170, 63 S.Ct. 140, 149, 87 L.Ed. 154, wherein the court, holding the trust income taxable to the grantor, stated "the possibility of the use of the income to relieve the grantor, pro tanto, of his parental obligation is sufficient." In the Stuart case, however, as pointed out, the trustees had no interest adverse to the grantor, but, more important, were expressly authorized by the terms of the trust to devote so much of the net income as "to them shall seem advisable" to the "education, support and maintenance" of the minor. In contrast, the trustees in the instant case are given no such express authority. However, petitioner contends that the language authorizing a trustee to apply any income withheld "for the benefit of such beneficiaries" brings the instant situation within the rule of the Stuart case. If this were the only pertinent language contained in the trust instrument, the argument would appear plausible; however, other provisions must be considered in ascertaining the intent of the donor. As already pointed out, the instrument expressly provides that the grantor would "continue to support, care for and maintain my son out of my individual property and income without regard to, and entirely separate from, the property declared in the trust herein created." The trust agreement also provided that the trust property was to be held by the trustee "solely for the uses, purposes and trusts aforesaid and not for my own use or benefit."

■ In Helvering v. Stuart, supra, 317 U.S., page 161, 63 S.Ct. page 144, 87 L. Ed. 154, the Court held, "The power to transfer or distribute assets of a trust is essentially a matter of local law." That means in the instant case, as in the Stuart case, the law of Illinois. In other words, the rights and obligations of the trustee must be determined in accordance with the Illinois court decisions and are largely dependent upon the intention of the grantor as manifested in the provisions of the trust instrument. Maguire v. City of Macomb, 293 Ill. 441, 453, 127 N.E. 682; Crow v. Crow, 348 Ill. 241, 244, 180 N.E. 877. Having expressly stated his intention to support his children out of his separate income, it is our view that the grantor imposed upon himself as trustee a binding obligation to refrain from using the trust income for such purpose. Hubbard v. Buddemeier, 328 Ill. 76, 85, 159 N.E. 229. It has frequently been held in Illinois that a trustee shall not use trust income or property for his own benefit, nor may he derive any profit from the trust at the expense of the beneficiary. Jones v. Jones, 124 Ill. 254, 264, 15 N.E. 751; Bennett v. Weber, 323 Ill. 283, 293, 154 N.E. 105; People v. Central Republic Trust Co., 300 Ill.App. 297, 310, 20 N.E.2d 999. The Illinois cases are convincing, so we think, that the trustee in the instant case was without power or authority to expend the trust income for the care, support and maintenance of his minor children.

■ Petitioner also relies upon Williamson v. Commissioner, supra, a decision of this court, in which we followed Helvering v. Stuart, supra, in holding that the income from the trust there involved was taxable to the grantor under Sec. 167. In that case, however, as was pointed out (page 493 of 132 F.2d), the trustees were given an "uncontrolled discretion" to apply all the net income as they deemed necessary "for the maintenance, support, protection, welfare and financial benefit or security of the wife and minor child." In contrast, there is absent from the instruments of the instant case such specific authority, and furthermore, as pointed out, the intention of the grantor was expressed to the contrary. We agree with the Board that the income was not taxable to respondents under this section.

The decision of the Board of Tax Appeals (now Tax Court) is affirmed.