## WHEELING DOLLAR SAVINGS & TRUST CO. v. YOKE.

### No. 6553.

United States Court of Appeals
Fourth Circuit.

Argued April 7, 1953.

Decided May 27, 1953.

Ralph L. Miller, Wheeling, W. Va., for appellant.

L. W. Post, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Howard Caplan, U. S. Atty., on brief), Clarksburg, W. Va., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This is an appeal from a judgment for the defendant in a suit by the Wheeling Dollar Savings & Trust Company, as Executor of the Estate of Charles J. Wolf, deceased, against F. Roy Yoke, Collector of Internal Revenue, for the recovery of income taxes paid for the calendar years 1937–1940, inclusive, and for the fiscal years ended March 31, 1942 to March 31, 1946, inclusive, and for the short period covered by the final return of taxpayer's decedent ending with the date of his death, September 1, 1946.

The facts are largely stipulated and may be summarized as follows:

Charles J. Wolf created five substantially identical irrevocable trusts on November 3, 1937, in favor of four nephews, Robert Emmett Levi, Harry Levi, Jr., Marc J. Wolf and Charles H. Wells, and a sister, Ruth Levi. Decedent named himself as trustee, placed in each trust $5,000 in cash for use by the trustee to purchase securities, and paid federal gift taxes accruing from the transactions. During the years in question Wolf was unmarried, and resided in a single room in a hotel in Wheeling, West Virginia. His sole heirs and beneficiaries under his will were the five trust beneficiaries named above, and a brother, Leo Wolf. The trust beneficiaries were never members of decedent's household, and all were domiciled in Massachusetts, except Marc J. Wolf, who resided in Indiana.

When he executed the trusts Wolf was 63 years of age, the nephews were aged 23, 26, 28 and 36, and the sister, Ruth Levi, was 59. All survived the decedent. None of the beneficiaries was in need of financial assistance from decedent. Before setting up the trusts Wolf, who was tax conscious, consulted tax counsel, and a business associate who had executed similar trusts.

During his lifetime Wolf, as trustee, filed fiduciary income tax returns for each trust and paid the requisite taxes. The respective beneficiaries, to whom payments of income were made at intervals, paid income tax upon such receipts. Neither Wolf nor

his estate received any of the trust income or principal, or compensation for services as trustee; and separate bank accounts and records and books of accounts of receipts and disbursements were kept for each trust.

Wolf and one V. U. Young were associates and controlling stockholders in certain theatrical corporations. On November 3, 1937, the same day on which Wolf created the trusts considered in this case, Young created four trusts for members of his family substantially similar to the Wolf trusts. The Tax Court held in 1945 in Young v. Commissioner, 5 T.C. 1251, that Young was taxable on the income from the trusts created by him, and no review of this decision was sought. It has been stipulated that Wolf is the person of that name referred to in the Young decision, and the facts recited therein are referred to for a better understanding of the facts in the pending case.

On November 9, 1937 Gary Theatre Company, whose stock was owned by the Young-Wolf Corporation, a personal holding company controlled by Wolf and Young, transferred 100 shares of the stock of Theatrical Managers, Inc., owned by Gary, to each of the five trusts created by Wolf, and 125 shares to each of the four trusts created by Young. The trustees of the nine trusts paid $15,828 for the total 1,000 shares of Theatrical Managers, Inc., transferred to them. This was the amount which Gary Theatre Company had paid for the stock but the value thereof at the time of the transfer was in excess of $100,000. In Young v. Commissioner it was held that the effect of these sales was to distribute the accumulated profits of Gary Theatre Company to the nominees of its controlling stockholders, that is, the nine trusts which had just been created; and that the sales must be treated as a distribution of a dividend by the Gary Theatre Company to Young and Wolf, the controlling stockholders of the Young-Wolf Corporation.

Wolf died September 1, 1946 and a deficiency was assessed against his estate on the theory that the income of the trusts was taxable to Wolf. Certificates of over-assessment were issued and income tax paid by the beneficiaries on trust income distributed to them was refunded.[1]

The executor of the estate paid the assessed deficiency, and filed a timely claim for refund, but the Collector disallowed the claim; and the pending suit was brought. The parties agreed in the District Court that if the court should determine that the income of the trusts was erroneously taxed to Wolf, the parties would compute the amount of the judgment to be entered and in doing so would give full credit, with interest adjustments, for refunds to the beneficiaries, above referred to, all of which would be subject to the approval of the court. The sole question for decision by this court is whether the District Court was right in holding that the trust income was properly taxable to Wolf rather than to the beneficiaries.

The five trust deeds were identical in terms except for a minor variation in the trust for the grantor's sister with respect to the time in which the property should

1. Except for the aforegoing facts gleaned from the opinion of the Tax Court in the Young case, there is no evidence in the record of investments made by the Wolf trusts, or of the income of each individual trust, or of the amounts of income distributed to the beneficiaries. The total amounts of trust income sought to be taxed to Wolf for the years in question are as follows:

| | |
|---|---|
| Calendar year 1937 | $78,714.37 |
| Calendar year 1938 | 9,119.90 |
| Calendar year 1939 | 24,000.00 |
| Calendar year 1940 | 16,550.00 |
| 1/1/41 to 3/31/41 | None |
| Fiscal year ended 3/31/42 | 9,540.00 |
| Fiscal year ended 3/31/43 | 39,001.25 |
| Fiscal year ended 3/31/44 | 38,099.98 |
| Fiscal year ended 3/31/45 | 1,440.00 |
| Fiscal year ended 3/31/46 | 6,081.95 |
| 4/1/46 to 9/1/46 | 2,672.00 |

vest in the beneficiary. Each deed declared that the settlor held in trust for the beneficiary the sum of $5,000 with the following powers, purposes and uses:

"1: I am to have the power at any time, and from time to time, to sell any of the trust property or estate for such price or prices as I may determine. Any money coming into my hands as the proceeds of any such sale or otherwise and forming a part of the principal of said trust estate, shall as soon as practical, be reinvested by me. In making such investments, I am to have full power to purchase any property, real or personal, (including notes and/or securities) which I may think desirable to acquire or hold as a part of the said trust estate, and I am not to be restricted to the purchase of such property as is ordinarily deemed advisable for trust property. I am likewise to have the power to rent or lease any and all real estate which may be included in said trust property for terms of any duration, whether such terms shall extend to a time beyond the termination of this trust or not. I am likewise to have full power and authority at my discretion to borrow money and secure the sums so borrowed by pledge or mortgage of any and all portions of said trust estate and I may, out of the corpus or income of said trust estate, or out of both such corpus and/or income repay the sums so borrowed. I am to have full authority to invest or re-invest any sums so borrowed; and to collect and receive the rents, income and profits arising from the trust estate therein created. It being my intention to retain as Trustee, such rights, power and authority in respect to the management, control and distribution of said trust estate for the use and benefit of the beneficiary, as I have with respect to property absolutely owned by me.

"2: Out of the income and revenue accrued from said trust estate I shall have power to pay all taxes, expenses necessary or properly incident to its care preservation and management; and all other reasonable or necessary charges incident to the administration of the trust created hereby. Any income not distributed, as hereinbefore provided, shall be added to the principal of the trust estate.

"3: In case of emergency, or illness of said beneficiary, requiring a greater sum than that accruing as income or revenue, I shall have power to use as much of the principal of said trust estate as may be necessary.

"4: Any receipt given by the beneficiary of this trust to me for any sum paid to him by me shall be a full acquittance and discharge for the payment mentioned in such receipt.

"5: The foregoing provisions for my said nephew, Charles H. Wells, shall be for his sole and separate use free from all statutory and marital rights of his wife; and free from his debts and without the right on his part to assign, pledge, hypothecate, or anticipate, or in any way create a lien upon any of the income or corpus of the trust estate hereby created before he shall receive the same, nor shall any of the said income or corpus be subject to any claims of any persons who may at any time be creditors of my said nephew, Charles H. Wells.

"(a) If the said beneficiary should die before my death then this trust estate shall thereupon revert to me and become mine immediately and absolutely, or

"(b) If I should die after said beneficiary reaches the age of 30, then this property shall thereupon become his immediately and absolutely and be turned over to him and in either case this trust shall cease."

The crucial question is whether the settlor of the trusts retained so much of "the bundle of rights" that makes up ownership of property as to justify the District Court in concluding that he continued to be the owner of the property which produced the income attributed to him by the Commissioner within the meaning of section 22(a) of the Internal Revenue Code, 26 U.S.C.A., as interpreted in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. In answering a question of this kind we are not bound by the technical niceties of the law of property or by any precise set of circumstances, but rather by the extent to which the settlor may still enjoy the economic

benefits of the property transferred and continue to exercise control over its management and distribution.

The circumstances relating to these factors vary greatly in the decided cases so that none of them furnishes an exact precedent, but there is a sufficient similarity in many of them to point the way to be followed in the pending case. The significant factors in the pending case in support of the District Court's decision are that Wolf had no need for the income from the trusts, that the beneficiaries were his closest relations, that he named himself as trustee and endowed himself in this capacity with full power of control and management, including the right to sell the property at any price he might determine, the right to reinvest the proceeds in any property he might think desirable, the right to rent the property for terms of any duration, and the right to borrow money and secure the loan by mortgage of the property; in other words, as he expressed it in the trust instrument, the right to manage, control and distribute the trust estate for the benefit of the beneficiaries as if the property were absolutely owned by him. Furthermore he retained the right to withhold the income from the beneficiaries and add it to the trust estate, and if the beneficiary should die before his death, the trust property was to revert to him.

The factors by which the appellant seeks to show that the settlor surrendered ownership in the property and freed himself from liability for the tax on the income therefrom are that the trusts were irrevocable long term trusts for the period of his life or that of the beneficiary, that the beneficiaries were not members of his immediate family or household, dependent upon him for support, but were collateral relations residing at points distant from his domicile, that the powers of management and control conferred upon the settlor as trustee were directed to be exercised for the benefit of the beneficiaries, and that separate records and separate books of account were kept for each trust, and that income (in amounts and at times not stated) was distributed at intervals to the beneficiaries.

We do not think that these added circumstances require the reversal of the District Court's decision. Wolf was never married; and although the beneficiaries were not dependent upon him, they were his next of kin, the persons most likely to call upon him in case of need, and the natural objects of his bounty. The creation of short term trusts with reversion to the settlor has been held to indicate a retention of ownership, but it has also been held that long term trusts are not inconsistent therewith if the other factors of control and enjoyment persist. That they did persist in this case is shown by the retention by Wolf of the right to withhold the income from the beneficiaries if he saw fit and by the grant of power to invest the principal as well as the income of the property in any business, including his own, without such restrictions as are ordinarily deemed advisable in the investment of trust property, and without that accountability for prudent investment to which a trustee is normally subject.

The actual use of these powers by Wolf is not shown completely in the record in this case. The taxpayer has not offered to show what part of the income Wolf paid to the beneficiaries or how he invested the principal and income of the trusts; but the stipulation refers to the Young case and from that we learn that under practically identical trust instruments, Young invested the trust funds in his own theatrical business and used the trust estates to disguise a distribution to himself of corporate profits in an attempt to escape the income taxes thereon. The report of that decision indicates that Wolf made similar use of the trust properties which he held as trustee; but even if we should shut our eyes to this fact on the ground that the findings as to Wolf in the Young case were not formally included in the stipulation in the pending case, as the appellant urges, the potentialities of enjoyment and control inherent in the Wolf trusts are still graphically illustrated.

We think that these features of the trusts bring the case within the Clifford doctrine as it has been applied in such cases as Commissioner of Internal Revenue v. Buck, 2

Cir., 120 F.2d 775; Brown v. Commissioner, 3 Cir., 131 F.2d 640; Stockstrom v. Commissioner, 8 Cir., 148 F.2d 491; Shapero v. Commissioner, 6 Cir., 165 F.2d 811; Ingle v. McGowan, 2 Cir., 189 F.2d 785; Hash v. Commissioner, 4 Cir., 152 F.2d 722. We are not persuaded to the contrary by the decisions involving various states of fact upon which the appellant especially relies in Suhr v. Commissioner, 6 Cir., 126 F.2d 283; Commissioner of Internal Revenue v. Katz, 7 Cir., 139 F.2d 107; Armstrong v. Commissioner, 10 Cir., 143 F.2d 700; Hall v. Commissioner, 10 Cir., 150 F.2d 304, 166 A.L.R. 1302; Cushman v. Commissioner, 2 Cir., 153 F.2d 510. See also, Jones v. Norris, 10 Cir., 122 F.2d 6; Commissioner of Internal Revenue v. Armour, 7 Cir., 125 F.2d 467; United States v. Morss, 1 Cir., 159 F.2d 142.

The judgment of the District Court is Affirmed.