**Jonathan, HOLDEEN, Plaintiff**

v.

**Riley J. RATTERREE, as Late District Director of Internal Revenue, Fulton D. Fields, as Late Acting District Director of Internal Revenue, Defendants.**

Civ. No. 6801.

United States District Court
N. D. New York.

Sept. 16, 1958.

Jonathan Holdeen, Pine Plains, N. Y., in pro. per., Lester E. Palmer, Jr., Poughkeepsie, N. Y., Robert P. Brisson, Pleasantville, N. Y., of counsel.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., David R. Frazer, Robert W. Kernan, Attys., Dept. of Justice, Washington, D. C., of counsel.

BRENNAN, Chief Judge.

The taxability to the settlor of the income of certain trusts is the ultimate problem in this litigation. The year involved is 1945. The statutory basis of taxation is found in Sec. 22(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(a). The immediate question for decision arises by reason of motions made by both litigants to set aside the verdict of the jury as to special questions submitted to it and to direct the entry of a judgment accordingly. A history of this litigation and the factual background disclosed therein are essential to the disposition of the pending motions and an understanding of this decision.

The action itself is typical. The complaint seeks to recover an amount in excess of $100,000 alleged to have been erroneously assessed against the petitioner on account of income tax for the year 1945. The alleged over-assessment results, according to the complaint, from the inclusion in plaintiff's taxable income for that year of the proceeds of five trust instruments not specifically described therein. The amount of said assessment was eventually paid. The necessary preliminary steps to afford jurisdiction in this court are unchallenged. In effect, the claim of error by the Commissioner in making the assessment is put in issue by the answer.

In making the assessment, the Commissioner relied upon two bases. (1) That the trusts in question are void ab initio since the periods of accumulation therein extended from five hundred to one thousand years. (2) That the income of the trusts is taxable to the plaintiff by reason of the ownership and control of the trust corpus retained by him.

■ The litigation as conducted involved only the second basis of assessment. Ownership and control were and are the questions involved. Ordinarily the validity of trusts is subject to attack only by parties directly interested therein. Although the defendants have submitted a brief on the question of validity, it would seem more proper to refrain from passing thereon if the problem may be disposed of on other grounds.

Upon the close of the evidence, which was practically undisputed, the question of the plaintiff's ownership and control of the trust properties was submitted to the jury. The question, as submitted to and answered by the jury, is set out below.

"Did Jonathan Holdeen possess such control over the property of the trusts mentioned below so that he be considered as substantially the owner of the trust properties for income tax purposes?

| Exhibit C | Yes | (Yes or No) |
| Exhibit 4 | Yes | (Yes or No) |
| Exhibit N | Yes | (Yes or No) |
| Exhibit 7 | Yes | (Yes or No) |
| Exhibit 8 | Yes | (Yes or No) |
| Exhibit 5 | Yes | (Yes or No) |
| Exhibit 6 | No | (Yes or No)" |

The plaintiff moves to set aside the verdict of the jury as to the answers made which in effect found that he exercised such control over six of the trust properties as to amount to substantial ownership. The defendant likewise moves as to the jury's verdict finding absence of such control over the trust property embraced in Exhibit 6. An understanding of the documents involved is a

necessary preliminary to a consideration of the evidence relating thereto.

The manner in which the trust instruments were offered in evidence, their correlation to the allegations of the complaint and to assessments as they appear in the ninety day letter are confusing. It should be noted that the instruments were submitted for the jury's consideration according to exhibit numbers presented in the chronological order beginning with the earliest date thereof. The next required explanation refers to the fact that although but five trust instruments appear to be the bases of the assessment and of the complaint, seven instruments were submitted to the jury. This is accounted for in the case of Exhibit C by the fact that the trustee, Janet Holden Adams, "merged" the corpus of that trust with Exhibit N. The authority for such action does not appear. In the matter of Exhibits 5 and 6, they seemed to have been considered as one fund since Exhibit 6 purported to consolidate Exhibit 5 therein. Actually the five trusts, referred to by the Commissioner in his assessment and by the plaintiff in the complaint, were intended to embrace the seven documents submitted to the jury. It appears that Exhibit C and Exhibit 5 had some measure of life which should be considered in this litigation.

## The Trust Instruments

The two oldest trusts, Exhibit C and Exhibit 4, are substantially alike. They both bear the date of October 18, 1936, although the signature of the witness on Exhibit 4 seems to bear date 10/5/38. Janet Holden is the named trustee. One of the documents is signed "Janet Holden" and the other "Janet Adams". The income beneficiaries are the settlor's wife and the great grandchildren of the settlor's father during lives of two of the settlor's daughters. Upon the death of the two daughters, the corpus is transferred to a Pennsylvania bank as successor trustee which shall pay annually to Hartwick College one-tenth of one percent of the income multiplied by the number of elapsed years since 1936. The remainder of the income is to be accumulated until the year 2936 when the entire estate is to be paid to the State of Pennsylvania. In both instruments, the trustee has the right to appoint a substitute trustee but the settlor retains the paramount right to make such appointment. In Exhibit C, the settlor reserves the right to alter the proportions in which the great grandchildren shall share in the benefits, or to exclude a great grandchild therefrom or include any descendant of such great grandchild and to substitute any educational or philanthropic corporation or governmental entity as residuary beneficiary.

Exhibit N is a trust instrument, dated Nov. 20, 1936. Janet Holden is the named trustee. The income beneficiaries are the settlor's daughter during her minority and thereafter the settlor's wife and the great grandchildren of settlor's father during the lives of two of settlor's daughters. Upon the death of the two daughters, the corpus is transferred, held and distributed as in Exhibits C and 4. The paramount right to appoint a substitute trustee is reserved to the settlor as in the last above named exhibits.

Exhibits 7 and 8 are somewhat similar. They are both dated Nov. 23, 1940. The acknowledgment on Exhibit 7 is deficient as to date and Exhibit 8 seems to have been acknowledged in July and August 1952. These instruments are referred to in the evidence as the Sanford Trusts. The trustee named in Exhibit 7 was a son-in-law of the donor. He was succeeded as trustee by donor's daughter, Sherley MacPherson. The named trustee in Exhibit 8 was another daughter of the settlor, Audrey Naylor. The income beneficiaries are the descendants of the donor, other than his sons and daughters, during their minority to continue during the lives of two of donor's children. Upon the death of the two children and of any unborn grandchild in being on the date of the instruments, the corpus is to be transferred to a Pennsylvania bank to be administered under the laws of that state. When no person is entitled to receive the income under the provisions

of the instrument, then one one-thousandth part of the income multiplied by the number of years which have elapsed since 1940 is to be paid to named colleges annually until the year 2340 as "expendable income". The remaining income is to be accumulated until the year 2940 when the corpus and accumulations are to be paid over to the State of Pennsylvania for educational endowment. In these instruments, the donor reserved the right to accumulate income for the benefit of a minor beneficiary descendant and apply same to his maintenance and education. The donor also reserved the right "to modify and substitute provisions for income beneficiaries during said lives provided no such beneficiary be donor or his wife or a dependent of donor and to substitute any new trustees named by him for the Trustee named herein". Another reservation of rights is reserved to the donor in each of the exhibits as follows—"Donor reserves the right by written declaration, to modify the provisions hereof with respect to beneficiaries, after said deaths, provided such modification be for the benefit of philanthropic, charitable or educational corporations or public purposes". Another provision of the instruments which may have some bearing upon donor's retained control is to the effect that if the principal of the trust funds be reduced by capital losses, the entire income is to be accumulated until the lost capital shall have been restored.

The next instrument in the order of date is Exhibit 5, referred to in the evidence as 44–10. It is dated July 5, 1944. The plaintiff is denominated as the trustor therein and Janet Adams, Randal Holden and plaintiff, Jonathan Holdeen, are referred to as trustees. The document is signed by plaintiff and Janet Adams only. It provides that the assets, transferred to the trustees, shall be held in the State of Pennsylvania and administered there, the agreement to be deemed subject to the laws of that state. When the assets of the trust are within Pennsylvania or Massachusetts, one five-hundredths of the income thereof multiplied by the number of years which shall have elapsed since July 5, 1944 shall be deemed expendable income and shall be paid over annually to the American Unitarian Association or to such other corporations, funds or foundations operated for religious, charitable, scientific, literary or educational purposes—"as the Trustees hereunder may designate but subject to the right reserved by the Trustor to make such designation". The trustees may appoint additional or substituted trustees.

The remaining instrument is Exhibit 6 and was referred to on the trial as 45–10. It bears date June 2, 1945. The plaintiff is denominated as trustor and his son and daughter, Randal Holden and Janet Adams are denominated as trustees therein. The instrument provides that the assets transferred to the trustees shall be held in Pennsylvania or Massachusetts and that the instrument shall be subject to the laws of Pennsylvania. The "expendable income" shall be determined and paid out in the manner referred to in Exhibit 5 except that the trustees may increase such expendable income in an amount not to exceed one-half the total income. The remainder of the income shall be accumulated in Pennsylvania and added to the corpus until the year 2444, when same shall be paid to the State of Pennsylvania. The instrument purports to subject the assets referred to in Exhibit 5 to the provisions of this instrument (Exhibit 6) and to consolidate Exhibit 5 therewith. The trustees may appoint additional or substituted trustees.

The plaintiff's proof substantially consisted in offering in evidence most of the instruments involved and plaintiff, in his own behalf, testified in a conclusive manner to the absence of control or dominion on his part over the corpus or income thereof.

The defendants, through the testimony of certain of the trustees and through cross-examination, developed many facts and circumstances directly and indirectly connecting the plaintiff with operation of the trusts. The plaintiff invari-

ably gave purchase orders for securities to be paid for by the trustees from trust funds. This business was subject only to the acceptance of notice of confirmation of the order by the trustee involved. Such acceptance was never refused by a trustee when there was money available to meet the purchase price. Loans were made by the trustees from one trust to the other and at times to the plaintiff without security and without interest. Advancements or loans in considerable sums were made from trust funds to members of the Holdeen family in their individual capacity. Some of the trustees had little knowledge of assets making up the trust estate. One of the trustees did not hold the key to the safe deposit box supposedly containing the trust assets. The writings, principally written by or addressed to Janet Adams and referring to trust business or properties, are replete with evidence from which domination and control by plaintiff of the trust estates may be inferred. A few of such instances are cited below. "Dad needs some money so we decided that you would buy some more 165 Broadway bonds from me. * * *". "Dad just drained me before you wrote telling me to send about all the funds to Randall". "Even if you should decide to make the purchase of Master Printers, wait for Dad to give the go-ahead signal". "Several weeks ago, Dad asked for all my funds and I emptied both N–S and 46–15, * * *". "You are about to buy from Trust II the DeWitt interest owned by it. The price will be fifty thousand dollars". In connection with the last quotation from a writing from Mrs. Janet Adams, a trustee, to her sister, also a trustee, Mrs. Adams orally testified as to the sale price * * *. "He (the plaintiff) fixed it and I agreed to it". Mrs. Adams also testified that she bought as trustee securities from the plaintiff. Mrs. Naylor, another daughter trustee, testified that plaintiff made investments for her. Mrs. MacPherson, another daughter trustee, in referring to trust investments, testified: "My father had to give his consent".

A brief statement will be made as to the background of factual circumstances which was developed upon the trial.

The plaintiff is an attorney who practiced his profession in New York State. He has devoted much of his efforts to the making and handling of investments and other like business activities. His family consists of his wife and some ten children and twenty-five grandchildren. His children are mature persons, maintaining their separate homes. All of the persons, named as trustees in the trust, are his sons or daughters. The family relationship may be described as closely knit and the plaintiff referred to them as members of the "clan". Financial and business transactions between the members are a common practice. Janet Holden Adams resides near the plaintiff's home and is the "chairman of the Board of Trustees" of the many trusts created by the plaintiff since 1936. She is named trustee in about one hundred of such trusts and very often uses the pronoun "we" in her testimony as to the trust transactions here involved.

Plaintiff adheres to an economic policy of frugality, coupled with the investment of funds with the ultimate goal of increasing corpus rather than to distribute the income therefrom. Such theory is expressed in the term "cumulative endowment" and is amplified in two books written by him bearing the titles "The Clan" and "Futuride Cult". The plaintiff himself recognizes the improbability of the ultimate carrying out of the terms of the trust agreements, because of the unusual life thereof.

No lengthy discussion of the law is necessary. The assessment is made upon the legal theory outlined in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 and its subsequent extensions and refinements. The correctness of the assessment is presumed and the plaintiff must assume the burden of showing the absence of such control by him as to preclude a finding of substantial ownership of the funds. The fact that the beneficiaries are not

legal dependents of, or members of the settlor's household, is not a bar to taxation. Wheeling Dollar Savings & Trust Co. v. Yoke, 4 Cir., 204 F.2d 410 at page 413. The fact that the trusts are of long duration is not decisive. Wheeling Dollar Savings & Trust Co. v. Yoke, supra; Helvering v. Elias, 2 Cir., 122 F.2d 171; Commissioner of Internal Revenue v. Buck, 2 Cir., 120 F.2d 775. The existence of reserved powers, rather than the exercise thereof is determinative of tax liability. Shapero v. Commissioner of Internal Revenue, 6 Cir., 165 F.2d 811 and cases cited. The above general rules apply especially where some right or power is reserved by the settlor in the trust instrument. Taxation is not to be escaped by the settlor in the absence of an express reservation where the settlor actually controlled the trust. Moskin v. Johnson, D.C., 115 F.Supp. 565, affirmed 2 Cir., 217 F.2d 278.

■■ A discussion of the many reported decisions dealing with the problem involved would be an onerous task without productive result. Ultimately each case must be decided upon its own facts and circumstances. No one fact is determinative. " * * * the court must look to the whole nexus of relations between the settlor, the trustee and the beneficiary, and if it concludes that in spite of their changed legal relations the three continue in fact to act and feel toward each other as they did before, the income remains the settlor's". Helvering v. Elias, supra, 122 F.2d at page 172.

■ Applying these rules to the evidence and circumstances here leads to the conclusion that plaintiff's motion to set aside the special verdict of the jury must be denied and the defendants' motion similarly addressed to the jury verdict as to Exhibit 6 must be granted.

The principal weakness in plaintiff's case is the total lack of explanation or refutation of those facts and circumstances which point directly to parental pressure and control. It is true that none of the income of the trusts was traced to plaintiff's possession but evidence of loans, investments and sales may well be considered as direct benefit to the settlor. The manipulation of the corpus by the settlor also indirectly benefits him in that an increase thereof adds to stature as a benefactor. It is also borne in mind that the evidence offered by the defendants was elicited from reluctant and evasive witnesses with an evident purpose of aligning themselves with plaintiff's contention. The power to produce or deny evidence affects the weight to be accorded thereto.

The effect of the granting of defendants' motion is questionable. Exhibit 6 was in force for only about seven months in 1945 and whether or not it legally accomplished a consolidation of Exhibit 5 is not decided. Inasmuch as there was no attempt made to separate the activities of the settlor as to that trust from the others, no sound reason appears which would justify a different result. The exhibits consisting of cancelled checks and writings, bearing date after the date of the execution of this particular trust, are indicative of a continuation of those acts of the settlor which resulted in a finding of his substantial control over the corpus of the prior dated trust instruments. The record is devoid of any affirmative evidence by the plaintiff which would sustain his burden as to this particular document. The "special scrutiny", required by the Clifford doctrine, shows no effective diminution of control of the corpus involved. The trust was but one more split of the economic unit within an unusually intimate family group.

In deciding that defendants' motion must be granted, it is noted that the question as submitted to the jury was most favorably phrased for the plaintiff. The jury may well have considered that a showing of control was required when in fact the absence of control was the fact question. The charge to the jury may also be subject to the criticism that since reserved powers and acts of control were invariably discussed as evidences of ownership, the jury could well have understood that the existence of such powers was essential to a finding of substantial ownership.

The findings of the jury as to Exhibits C, 4, N, 7, 8 and 5 are adopted. The finding of the jury as to Exhibit 6 is set aside and the finding is made that plaintiff did exercise such control over the trust property so as to be considered as substantially the owner thereof.

It is concluded that plaintiff has failed to sustain his burden that the tax was not properly and legally assessed and collected. The motions to set aside the verdict are decided as above; the defendants' motion for a directed verdict is granted and a judgment, dismissing the complaint, will be entered, and it is

So ordered.