Jonathan **HOLDEEN**, Plaintiff,

v.

**Riley J. RATTERREE**, as late District Director and **Fulton D. Fields**, as late Acting District Director of Internal Revenue, Defendants.

Civ. No. 6801.

United States District Court
N. D. New York.

Aug. 10, 1960.

On Motion for Clarification of Decision
Dec. 29, 1960.

Jonathan Holdeen, Brooklyn, N. Y., in pro. per.; Allan E. Rappleyea, Poughkeepsie, N. Y., of counsel.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., for defendant; Kenneth P. Ray, Asst. U. S. Atty., Robert Kernan, Atty., Dept. of Justice, and Jerome S. Hertz (on motion for clarification), Atty., Dept. of Justice, Washington, D. C., of counsel.

BRENNAN, Chief Judge.

Plaintiff brings this action to recover income taxes claimed to have been illegally collected for the year 1945. The present phase of this litigation involves principally a determination as to whether or not a lawful merger of two trusts, created by the plaintiff, has been accomplished and whether or not the resulting trust, so created, is valid.

The factual background of this litigation is indicated in this court's decision in Holdeen v. Ratterree, 166 F.Supp. 694 and in the opinion of the Circuit Court which modified the above decision. Holdeen v. Ratterree, 2 Cir., 270 F.2d 701. As far as essential here, it is sufficient to say that the judgment appealed from was vacated and this court was expressly directed to decide whether or not a merger or consolidation of the two trusts, above mentioned, was legally accomplished.

The two trusts presently involved were received in evidence upon the trial as Exhibits 5 and 6. Exhibit 5 has been generally referred to as 44–10, same bearing date of July 5, 1944. Exhibit 6 is known as 45–10 and bears date June 2, 1945. On the trial of this action, the jury found that plaintiff exercised such control over the property contained in trust 44–10 as to be considered as substantially the owner thereof. The jury found that plaintiff did not exercise such control over the property of Exhibit 6 (45–10). In other words, the income from 44–10 was prop-

erly taxable and plaintiff could not recover back the tax paid thereon. In 45-10, it was found by the jury and in the Circuit Court that the income from 45-10 was not properly taxable to the plaintiff and that he could recover in this action the amount of the tax paid thereon.

The problem of merger arises by reason of the provision set out below found in the trust agreement of June 2, 1945 (45-10).

"The property and assett (assets) held in trust under 'Holdeen Trust Agreement' (44-10) dated July 5, 1944 between Jonathan Holdeen, as Trustor and Janet Adams and others as Trustees, shall from the date hereof be held subject to the provisions of this agreement (45-10) and said former agreement shall be deemed modified so as to be converted into the trust created hereunder and to be consolidated therewith".

Acting upon the above provision, the trustees of 45-10 testified that after the date of that instrument, the assets of 44-10 were considered as making up a part of the corpus of 45-10. Income tax returns for the year 1945 and thereafter were filed by said trustees as including all of the income of 44-10 for the year 1945 and thereafter.

Upon the trial of the action, no evidence was offered as to the income of 44-10 during any part of the year 1945. As indicated in the opinion of the Circuit Court, the questions of the time of the merger and its validity are a matter of importance, assuming that 44-10 actually had an income during the year 1945.

Although not specifically directed by the Circuit Court, this court took evidence as to the existence of income from 44-10 during the whole year 1945. This subject would appear to be one which would be readily ascertained by agreement or stipulation. The plaintiff was not inclined to so stipulate although not particularly disputing the evidence offered. It is sufficient to say that the evidence showed and the court finds that from January 1, 1945 to June 2,

1945, the operation of 44-10 showed a taxable gain of $33,104.44 and from the period of June 2, 1945 to December 31, 1945, same amounted to $421.65. It follows from the above that a determination of the question of merger is essential to an ultimate decision in this case. We will turn to this question.

Although not extensively argued or briefed, doubt arises as to the sufficiency of the agreement 44-10 to create a charitable trust or make a gift of the corpus thereof for the reason that under the terms of the instrument the corpus never vests in a designated beneficiary. Levy v. Levy, 33 N.Y. 97, at page 101. If the instrument fails in the above respect, the plaintiff as settlor of the trust, would be possessed of the ownership of the property therein and could incorporate the principal thereof in 45-10 as he without doubt intended by the provision thereof above quoted.

 In any event, this court finds that such a merger was accomplished through the above quoted language of 45-10 and in accordance with the power especially reserved in 44-10 which is set out below.

"Trustor reserves the right by written declaration to modify the terms of this instrument but not so as to change beneficiaries unless to donees and purposes which are charitable, educational or public."

Defendant contends that the power to modify, reserved by the settlor as above, does not include the power to consolidate or absorb. The only restriction upon the settlor's reserved power was that he could not change beneficiaries unless to donees and purposes which are charitable, educational or public. Here he did not change the income beneficiary and he supplied the ultimate beneficiary. In effect, he in no way modified 44-10 beyond the terms of the powers reserved. Even if the trustees may be said to have recognized the continued existence of 44-10 after the date of its purported consolidation, their action does not destroy the validity thereof. It appears that certain items in connection with banking operations, which occurred after June 2, 1945,

bore indication of reference to 44–10. Same were the acts of the trustees, not affecting the validity of the settlor's act and carried no significance except possibly as a means of identifying the source of assets or income.

The finding is made that the so-called consolidation or merger of the property and assets held in trust under 44–10 was a valid exercise of the powers of the settlor. It follows that plaintiff may recover the income tax paid upon the income of 45–10 for the year 1945 which would include all taxable income or gain derived from the assets of 44–10 after June 2, 1945.

■■ The plaintiff contends that this court has no power to consider the question of the validity of 45–10 under the language of the Court of Appeals' decision. It is correct that the language thereof provides that a new judgment be entered after the question of merger has been decided. Plaintiff reads the decision too literally. The Court of Appeals also states that the validity of the trust was not before the court on the appeal and no opinion is expressed on that subject.

The ninety day letter, issued by the Commissioner, indicates that a basis of the assessment was the invalidity of the trust here involved. The answer interposed by the defendant also raises the question of validity. If the plaintiff's contention be adopted, this controversy directly raised in the pleadings could not be disposed of in this litigation. Such a construction avoids practicality. This court, in its previous decision (D.C., 166 F.Supp. 694), specifically refrained from passing upon the question of validity since it was felt that the question of ownership and control was a sufficient basis for the decision made. The Circuit Court held otherwise as to the specific trust here involved. Problems, not passed upon in the appellate court, are not foreclosed by its mandate. "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." Sprague v. Ticonic Nat. Bank, 307 U.S.

161, at page 168, 59 S.Ct. 777, at page 781, 83 L.Ed. 1184. Our own Court of Appeals in Federal Trade Commission v. Standard Education Society, 2 Cir., 97 F.2d 513 seems to foreclose plaintiff's argument. "It is true that a lower court must not undertake to change by one jot the decision of the court above; but for that very reason it should try to understand it, and to adhere to a purely verbal construction which will defeat its obvious intent is not a way to do so." The plaintiff's contention that this court may not now pass upon the validity of trust 45–10 is rejected.

■ Plaintiff next contends that the defendant does not have the status which would permit him to attack the validity of the trust. Reliance seems to be placed upon this Court's statement in its prior decision to the effect that the validity of trusts is ordinarily subject to attack only by parties directly interested therein. This statement, taken from Crehan v. Megargel, 234 N.Y. 67, 136 N.E. 296, applies to individual strangers to the trust instrument. The above authority did not involve the question of taxation or the status of a taxing authority. The many reported cases in which the Commissioner of Internal Revenue did in fact question the validity of a trust indicates that plaintiff's contention is without merit. Morsman v. Commissioner, 8 Cir., 90 F. 2d 18, 113 A.L.R. 441; Johnson v. Commissioner, 2 Cir., 86 F.2d 710; Brennan v. United States, D.C., 129 F.Supp. 155, affirmed 2 Cir., 221 F.2d 120.

■ The validity with which we are concerned here is one which affects taxability only and arises out of the undoubted right of the Commissioner of Internal Revenue to examine relevant documents for the purpose of ascertaining whether or not they are in fact what they purport to be. This right of the Commissioner does not encroach upon the recognized broad power of courts of equity to construe, regulate and administer trust documents binding all parties interested therein. The validity referred to here is limited to the questions of lawful income tax assessments. Morgan v.

Com'r, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035.

■ Plaintiff's contention that the income of trust 45–10 for the year 1945 is not legally taxable to him and that he may recover the tax paid thereon may be quickly disposed of. The defendant contends that such income is taxable to plaintiff because the trust instrument provides for an unlawful accumulation thereof over a period of five hundred years. This court does not so read the instrument. It cannot be doubted that the settlor intended to prove his economic theory of "cumulative endowment" through the language of the instrument itself. His ultimate purpose, as disclosed in his writings, in this and other trust instruments was to so concentrate wealth in a subdivision of government so that the base of taxation might be jeopardized if not extinguished. He attempted to fashion an economy which would not require the payment of taxes and his apparent reason for designating the State of Pennsylvania as the ultimate beneficiary was based upon the belief that an unlimited accumulation of income would be recognized as lawful by that State. He made certain, however, by the terms of the instrument that the accumulations contemplated and required thereby were limited to those which were lawful. This is made clear by the provision of paragraph Sixth—"Said Trustees shall annually pay over said expendable income and all other net income hereunder which is not lawfully subject to accumulation under the terms hereof, to the American Unitarian Association. * * *". It would seem to follow that by the terms of the instrument itself, the accumulations of income are limited to those which are lawful and the defendant's claim of unlawfulness and therefore taxability to the plaintiff cannot be sustained.

■ In addition, the statute law of both the State of New York and the State of Pennsylvania provide in substance that where the period of accumulation of income in a trust instrument is void for any reason, such income shall be paid to and be the property of the income beneficiary. New York Personal Property Law, McKinney's Consol. Laws, c. 41, § 16; Purdon's Pennsylvania Statutes Annot. Title 20, Sec. 301.7.

The remaining question involves the taxability of the value of the gift made by the settlor upon the execution of the trust instrument. The trust agreement 45–10 shows that certain bonds were transferred to the Trustees which made up the corpus of the trust fund. These bonds were of the face amount of $43,000 and the actual value of same is determined to be 90% thereof or $38,700 on June 2, 1945. The net value of the gift then, after deducting the cost price of said bonds to the settlor in accordance with the provisions of paragraph Third of the agreement amounted to $26,956.25.

The plaintiff claims that he was entitled to a deduction of the last mentioned amount from his income tax return of 1945 as a contribution to charity under the provisions of the Revenue Act then in force (26 U.S.C. § 23(o) (1), now found in 26 U.S.C. § 170(c) (1). This statute in effect provides that a deduction for a charitable contribution may be taken by the taxpayer if made within the taxable year " * * * to or for the use of—* * * A State * * * for exclusively public purposes". The defendant contends that the remoteness of the possession and enjoyment of the gift, the extended period of accumulations and the contingencies implicit in the five hundred year period are such as to require this court to hold that the gift is not in the public interest and was not "to or for the use of" the State as the terms are used in the statute. This court agrees.

■ It is recognized that delay in the enjoyment of a gift does not in itself destroy its charitable nature. Delay is a matter of degree and no case is cited which appears to recognize that a gift, whose enjoyment is delayed for five hundred years, has ever been held to be presently charitable within the tax law.

■ The settlor himself, upon the trial of this action, recognized the contingency that a court of equity may well

intervene in the matter of the existence of such a trust. The following question and answer is indicative of the plaintiff's understanding.

"The Court: Then how could such a trust be carried out?

"The Witness: It could be because it is foreseeable that at some time there would be an excessive accumulation and at that time the Courts of Equity would terminate it."

Just what a court of equity might do at some time during the course of five hundred years is difficult to predict. Such a recognized contingency is a factor in determining whether the provision for accumulations is an essential part of the settlor's plan.

Whether or not the settlor's plan as evidenced by the instrument is beneficial to the public interests requires more discussion. If we start with the assumption that the transfer by the settlor to the trustees was a good charitable gift (Girard Trust Co. v. Russell, 3 Cir., 179 F. 446, at page 450), we must still appraise its purpose in the light of our public policy as to the concentration of wealth. (Scott on Trusts, Section 377). Such appraisal is not to be limited to the specific instrument referred to in this decision, but its purpose and effect must be evaluated in the light of the six additional trust instruments involved in this litigation, and the testimony and writings of the settlor as they appear in the trial record.

It may be stated generally that five of the six additional trust instruments involved in this action provide for the accumulation of income to be paid together with the principal to the State of Pennsylvania at the expiration of one thousand years from their execution date. (Instrument 44–10 does not designate an ultimate beneficiary). The instant trust (45–10) is similar to the above, except that the period of accumulation is fixed at five hundred years. The impractical and unrealistic result of such provisions is evident from the remarks of the Court of Appeals in its decision referred to

above. That the settlor seeks to concentrate the wealth of the world in a single governmental unit is not entirely fantastic when it is understood that the principal of the trust fund 45–10 has reached the valuation of about $750,000 after an existence of about thirteen years. The settlor in his writings and testimony concedes that the cumulative power of compound interest for a period in excess of two hundred years would be unfortunate for the general welfare of humanity, as it would concentrate too great wealth in the hands of a few persons. He denies a similar result when such wealth is held by a political unit. The reasoning is not apparent to this court.

The plaintiff's long time advocacy of his theory of "cumulative endowment", his emphasis upon unrestrictive accumulations, and his choice of the State of Pennsylvania as the ultimate beneficiary for the reason that he believed that its laws permitted such accumulations, lead to the finding that the provision for accumulation was an essential part of his scheme, which together with the unreasonably long period provided therefor, destroys the charitable nature of his gift. (Scott on Trusts, Section 401.9). In summary, the following quotation taken from Matter of Hamilton, 185 Misc. 660, at page 664, 57 N.Y.S. 2d 359, 363, affirmed 270 App.Div. 634, 63 N.Y.S.2d 265, would seem to be appropriate.

"The term 'charity,' therefore, cannot be used as a means to devote property in perpetuity to purposes which, while appealing to the donor and perhaps other individuals as proper, are in fact not in their broad and general aspects beneficial to the public interests. To this there must be added the further qualification of conditions prevailing at the time and place the question arises".

The transfer of assets made by plaintiff on June 2, 1945 making up the corpus of 45–10 is not deductible from his income for that year as a charitable contribution.

The above will constitute this court's findings and conclusions. If other or additional findings or conclusions are desired, same may be submitted within ten days.

Since the judgment to be entered may involve a computation formula, judgment will be entered by defendant in accordance with the decision of the Court of Appeals and of this court. If same is not agreed upon, it may be settled by this court on five days notice.

On Motion for Clarification

BRENNAN, Chief Judge.

Both litigants agree that the decision of August 10, 1960 held that (1) there was a legal merger of Trust 44–10 with Trust 45–10 on June 2, 1955; (2) that plaintiff was not entitled to a deduction under Section 23(o) (1) Internal Revenue Code of 1939 for his gift to the corpus of Trust 45–10; (3) that the income of Trust 45–10 was not taxable to plaintiff upon the basis of an unlawful accumulation thereof. The defendant immediately questioned the clarity and completeness of the above decision.

Upon the direction of the court, a motion was made which is best expressed in the language of the moving papers, viz.: " * * * we respectfully move the Court to clarify its decision so as to cover separately and specifically (1) the precise grounds upon which the taxpayer was denied a deduction under Section 23(o); (2) the existence and the taxability of the capital gain income of Trust 45–10 for the year 1945; (3) the existence and taxability of undistributed ordinary income of Trust 45–10 for the year 1945; and, (4) the fact and amount of the actual current distribution to charity in 1945".

Upon review of the decision, it is concluded that additional findings are necessary for the complete disposition of the problems arising in this complicated litigation. This situation arises primarily because of the court's failure to appreciate that the controversy involved the determination as to the treatment for tax purposes of ordinary income from Trust 45–10, either distributed or accumulated, and capital gains arising from the sale or exchange of capital assets of the trust during the year involved.

The financial details of the above items appear in the record and as computed by the defendant and apparently not disputed by the plaintiff are adopted and found by this court as follows:

"For the period January 1–June 2, 1945, Trust 44–10 had gain on the sale or exchange of capital assets held for more than 6 months of $66,208.88, of which 50%, $33,104.44, is to be taken into consideration for federal income tax purposes. In addition, Trust 44–10 had ordinary income after expenses during that period of $532.22.

"For the period June 2–December 31, 1945, Trusts 44–10 and 45–10, as merged, had total gain on the sale or exchange of capital assets held for more than 6 months of $38,760.44. In addition, Trust 45–10 had ordinary income after expenses of $2,441.96.

"For the year 1945, there was currently distributed to the American Unitarian Foundation under the terms of Trust 45–10, the sum of $13.10. The balance of total capital gains and ordinary income, $107,930.40, was, under the terms of Trust 45–10, added to principal and thus accumulated. Trust 45–10 did not declare or pay federal income tax liability for the year 1945 with respect to any of these amounts."

The prior decision held in effect that the accumulation of income was not unlawful and was not taxable to Mr. Holdeen. The decision will stand upon the narrow ground stated, to wit: that the trust instrument did not require an unlawful accumulation of income. The decision, however, did not take into consideration that increases in the value of capital assets, resulting from trade therein, are not items of income under the terms of the trust agreement and are treated separately under the provisions of the Internal Revenue Code.

Neither did it take into consideration that the trust involved had undistributed or accumulated ordinary income during the year in question.

The basis for clarification and final decision of all facets of this litigation would seem to rest in an amplification of the finding in the prior decision that the gift to the corpus of 45–10 was not deductible because of consideration of public policy.

By its prior decision, this court intended to hold that the gift not being in the public interest and not being presently "to or for the use of" the State of Pennsylvania was not a valid and complete gift. Such decision rests upon the application of the law of either Pennsylvania or New York. It would seem that a gift or a trust that contravenes public policy is in the same position as one that is unlawful, is void from its inception and conveys no equitable title to the trust estate. (Scott on Trusts (2nd ed.) 377). For tax purposes, the trust attempted to be created is in no different position than where the settlor retains the power of revocation. The trustees hold the corpus upon a resulting trust and the settlor here may repossess the corpus of the trust fund so that it follows that he may not recover back the tax paid upon capital gains.

There would seem to be no question but what the amount of distributable income paid to the American Unitarian Association is not taxable to the plaintiff.

A different question arises as to that portion of the ordinary income which was undistributed or added to the corpus of the fund as an accumulation. If the plaintiff could control the corpus of the fund, as held above, then it follows that he also could control the income thereof, even though he received no part of same during the year in question. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. Plaintiff may not recover in this action the tax assessed and paid thereon.

Judgment will be prepared by the defendant in accordance with the decision of the Circuit Court of Appeals and in accordance with the decision of August 10, 1960, together with this decision and if not agreed upon, same may be settled on five days notice, and it is

So ordered.